**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| FELIX PAYMENT SYSTEMS LTD. | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |

Case No. 25-00053-5

Chapter 15

<u>**LIST PURSUANT TO RULE 1007(a)(4) OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**</u>

Felix Payment Systems Ltd. as the foreign debtor and foreign representative (the "<u>Foreign Debtor</u>" or "<u>Foreign Representative</u>"), which is the subject of a reorganization proceeding (the "<u>CCAA Proceeding</u>") commenced under Canada's *Companies' Creditors Arrangement Act* (the "<u>CCAA</u>"), pending before the Supreme Court of British Columbia (the "<u>Canadian Court</u>"), by its undersigned counsel, hereby make the following statements required by section 1515(c) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"):

**I.        Statement required by Section 1515(c) of the Bankruptcy Code**

Pursuant to the Amended and Restated Initial Order entered in the CCAA Proceeding, the Foreign Debtor is authorized to act as the Foreign Representative. Other than the CCAA Proceeding, the Foreign Debtor believes that there are no foreign proceedings pending with respect to the Foreign Debtor.

The Foreign Debtor's registered office is:

Felix Payment Systems Ltd.
20th Floor, 250 Howe Street
Vancouver, BC, V6C 3R8, Canada

166138624.3

II.    **All parties to litigation pending in the United States in which a Foreign Debtor is a party at the time of filing of the chapter 15 petition**

The Foreign Debtor is not presently a party to any litigation pending in the United States. Mr. Robert Alpert and his related entities (collectively, the "Robert Alpert Group") filed a complaint ("Complaint") against the Foreign Debtor on November 27, 2023 in the Court of Common Pleas of Cuyahoga County, Ohio; Case No.: CV 23 969133, which ultimately led to the Robert Alpert Group obtaining default judgment (the "Default Judgment") against the Foreign Debtor. True and correct copies of the Complaint and Default Judgment are attached hereto as **Exhibits 1 and 2, respectively**.

III.    **Entities against whom provisional relief is sought under section 1519 of the Bankruptcy Code**

The Foreign Debtor will seek provisional relief against the Robert Alpert Group, which are all listed on the Complaint, and any of its successors or assigns.

IV.    **Corporate ownership statement under rules 1007(a) and 7007 of the Federal Rules of Bankruptcy Procedure**

Pursuant to Rules 1007(a) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the Foreign Debtor does not have a parent company and no publicly held corporation owns 10% or more of the Foreign Debtor's shares. A true and correct copy of the Central Securities Register as of August 31, 2023 is attached hereto as **Exhibit 3**.

## DECLARATION UNDER PENALTY OF PERJURY

I, Andrew Cole, am the Chief Executive Officer of the Foreign Debtor in this Chapter 15

Case.  In such capacity, I am familiar with the operations and financial affairs of the Foreign

Debtor.  I declare under penalty of perjury under the laws of the United States of America that any

information provided in the foregoing "List Pursuant to Rule 1007(a)(4) of the Federal Rules of

Bankruptcy Procedure" is true and correct to the best of my knowledge, information and belief,

with reliance on appropriate corporate officers.

Dated:  JAN  3,  2025

_____

ANDREW COLE

EXHIBIT 1



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**November 27, 2023 16:45**

By: ROBERT D. ANDERLE 0064582

Confirmation Nbr. 3026833

ROBERT ALPERT, ROMAN ALPERT AS TRUSTEE OF R, ET AL

     vs.

FELIX PAYMENT SYSTEMS, LTD.

CV 23 989133

**Judge:** EMILY HAGAN

**Pages Filed:** 118

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **ROBERT ALPERT**<br>7312 Louetta Road #519<br>Bldg 518<br>Spring, TX 77379 | ) CASE NO.<br>)<br>)<br>) JUDGE |
| **ROMAN ALPERT AS TRUSTEE OF**<br>**ROMAN ALPERT TRUST**<br>7312 Louetta Road #519<br>Bldg 518<br>Spring, TX 77379 | )<br>)<br>)<br>)<br>) |
| **DON SANDERS**<br>5900 JP Morgan Chase Tower<br>600 Travis, Suite 5800<br>Houston, TX 77002 | ) **COMPLAINT FOR BREACH OF**<br>) **CONTRACT**<br>)<br>)<br>) |
| **ANDY CRACCHIOLO**<br>3219 East Camelback Road, #785<br>Phoenix, AZ 85018 | ) **JURY DEMAND ENDORSED**<br>) **HEREON**<br>) |
| **ELK CAMP VENTURES, LLC**<br>8 The Green, Suite R<br>Dover, DE 19901 | )<br>)<br>) |
| **HYPERION INVESTMENTS, LLC**<br>1720 Magoffin Ave.<br>El Paso, TX 79901 | )<br>)<br>) |
| **JAMES TAYLOR AS TRUSTEE OF**<br>**JAMES TAYLOR IRREVOCABLE**<br>**TRUST**<br>181 Elmwood Avenue Ext.<br>Gloversville, NY 12078 | )<br>)<br>)<br>)<br>) |
| **R. DAVID HOOVER AS TRUSTEE OF**<br>**THE R. DAVID HOOVER REVOCABLE**<br>**TRUST** dated January 30, 1997, as amended<br>and restated September 14, 2012<br>7209 Rustic Trail<br>Boulder, CO 80301 | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |

|  |  |
|---|---|
| vs. | ) |
|  | ) |
|  | ) |
| **FELIX PAYMENT SYSTEMS, LTD** | ) |
| 250 Howe Street, Level 20 | ) |
| Suite 100-218 | ) |
| Vancouver, BC V6c 3RB | ) |
|  | ) |
| Defendant. | ) |

Now come Plaintiffs Robert Alpert, Roman Alpert Trust, Don Sanders, Andy Cracchiolo, Elk Camp Ventures, LLC, Hyperion Investments, LLC, James Taylor Irrevocable Trust, and the R. David Hoover Revocable Trust dated January 30, 1997, as amended and restated September 14, 2012 (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against Defendant Felix Payment Systems, LTD, ("Defendant") allege and aver as follows:

## NATURE OF ACTION

1.     Plaintiffs are investors who individually loaned funds to Defendant subject to a Convertible Note Purchase Agreement (attached as Exhibits A-1 through A-3) and Convertible Promissory Notes (attached as Exhibits B-1 to B-13). Payment of the principal and accrued interest on each of the Plaintiffs' respective Convertible Promissory Notes became due on August 21, 2023. However, Defendant has failed and/or refused to make said payments to Plaintiffs. Accordingly, Defendant has breached the Convertible Note Purchase Agreement and the Convertible Promissory Notes, and Plaintiffs are entitled to judgment against Defendant for the principal and accrued interest loaned to Defendant subject to these agreements.

## THE PARTIES

2.     Plaintiff Robert Alpert is a natural person and is an Investor in Defendant.

3.     Plaintiff Roman Alpert Trust is a trust formed under the laws of the State of Texas, Roman Alpert Trustee. The Trust is an Investor in Defendant.

4.      Plaintiff Don Sanders is a natural person who is an Investor in Defendant.

5.      Plaintiff Andy Cracchiolo is a natural person who is an Investor in Defendant.

6.      Plaintiff Elk Camp Ventures, LLC is a Delaware limited liability company. Elk Camp is an Investor in Defendant.

7.      Plaintiff Hyperion Investments, LLC is a Texas limited liability company. Hyperion is an Investor in Defendant.

8.      Plaintiff the James Taylor Irrevocable Trust is a trust formed under the laws of the State of New York, James Taylor, trustee. The Trust is an Investor in Defendant.

9.      Plaintiff R. David Hoover Revocable Trust is a trust formed under the laws of the State of Colorado, R. David Hoover trustee. The Trust is an Investor in Defendant.

10.     Defendant Felix Payment Systems, Ltd. is, upon information and belief, is a corporation formed under the laws of British Columbia, Canada, and is registered in and doing business in British Columbia, Canada.

**JURISDICTION AND VENUE**

11.     This court has subject matter jurisdiction under R.C. 2305.01.

12.     Venue is proper and this Court has personal jurisdiction over the Defendant pursuant to Section 9.9 of the Convertible Note Purchase Agreement (the "Purchase Agreement"). Section 9.9 provides:

> Law Governing; Jurisdiction. The laws of Ohio (without giving effect to its conflicts of law principles) govern this Agreement and all matters arising out of or relating to this Agreement and the transactions contemplated hereby. The parties hereto hereby irrevocably submit to the exclusive jurisdiction of the federal or state courts of the State of Ohio over any proceeding arising out of or relating to this Agreement or any of the transactions contemplated hereby and each party hereby irrevocably agrees that all claims in

respect of such proceeding may be heard and determined in such courts. The parties hereto hereby irrevocably waive any objection which they may now or hereafter have to the laying of venue of any proceeding brought in such courts or any claim that such proceeding brought in such courts has been brought in an inconvenient forum. Each of the parties hereto agrees that a judgment in such proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law. Each of the parties hereto hereby irrevocably consents to process being served by any other party to this Agreement in any proceeding by delivery of a copy thereof in accordance with the provisions of Section 9.1.

## FACTUAL ALLEGATIONS

13.    On or about February 21, 2021, Defendant and the Plaintiffs entered into the Purchase Agreement pursuant to which Plaintiffs (referred to as "Investors" in the Agreement) loaned Defendant (referred to as the "Company" in the Agreement) the following amounts:

| Investor Name | Loan Amount (s) |
|---|---|
| Robert Alpert | - $25,000 (with interest calculated from September 21, 2020<br>- $50,000 (with interest calculated form December 21, 2020<br>- $50,000 (with interest calculated from January 5, 2021)<br>- $200,000 (with interest calculated from February 19, 2021)<br>- $150,000 (with interest calculated from February 19, 2021)<br>- $112,250 (with interest calculated from June 8, 2022) |
| Roman Alpert Trust | $150,000 (with interest calculated from February 12, 2021 |
| Don Sanders | $150,000 (with interest calculated from February 17, 2021) |
| Andy Cracchiolo | $150,000 (with interest calculated from February 21, 2021) |
| Elk Camp Ventures, LLC | $25,000 (with interest calculated from February 21, 2021) |
| Hyperion Investments, LLC | $50,000 (with interest calculated from February 21, 2021) |
| The R. David Hoover Revocable Trust dated January 30, 1997 as | $100,000 (with interest calculated from February 25, 2021) |

| | |
|---|---|
| amended and restated September 14, 2012 | |
| The James W. Taylor Revocable Living Trust dated September 25, 2001 | $50,000 (with interest calculated from February 25, 2021) |

14.     Pursuant to the Purchase Agreement, Defendant issued to each Plaintiff one or more Convertible Promissory Notes (the "Notes") promising to pay the Plaintiffs the principal sums loaned plus interest at a rate of 6% per annum accruing from the date specified in the Note.

15.     The Purchase Agreement and the Notes are governed by the laws of the State of Ohio.

16.     The Purchase Agreement and the Notes permit the Plaintiffs to elect between repayment of the Notes or conversion of the Notes into shares of the Defendant company upon the occurrence of an equity financing, prior to the maturity date, or upon the sale of the company. However, the Plaintiffs did not make such an election and instead seek repayment of the principal amount loaned plus accrued interest pursuant to the Purchase Agreement and the Notes.

17.     Section 1.3 of the Purchase Agreement governs repayments. It provides, in pertinent part:

> (a) *Mandatory Repayments*. The full and unpaid principal amount of the Notes, together with all accrued and unpaid interest thereon, shall be paid in full by the Company to the Investors on the earlier of (i) the Maturity Date, (ii) a Sale of the Company, and (iii) an Event of Default in which the Notes have been accelerated by the Investors or are automatically accelerated in accordance with the provisions of this Agreement.

18.     Section 2 of the Notes also governs repayments. It provides, in pertinent part:

> (a) **Mandatory Repayments**. Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date, (ii) a Sale of the Company, and (iii)

      (b) an Event of Default in which the Notes have been accelerated
by the Investor or are automatically accelerated in accordance
with the provisions of the Purchase Agreement.

19.     The Purchase Agreement required Defendant to make certain financial disclosures so long as any Note is outstanding, including balance sheets and statements of income and cash flow prepared in accordance with GAAP. It also required Defendant to be responsible for the fees and expenses of attorneys, accountants, consultants and any other representative or agent retained by the Plaintiffs regarding the Purchase Agreement.

20.     The Purchase Agreement originally defines the term "Maturity Date" as the date of the eighteen (18) month anniversary of the Effective Date. The Effective Date of the Agreement is February 21, 2021.

21.     However, on or about February 5, 2023, pursuant to a First Amendment to the Convertible Note Purchase Agreement (the "First Amendment"), the Purchase Agreement was amended to state that the Maturity Date was changed to May 21, 2023. See Exhibit A-2. In the First Amendment, the parties also agreed that effective February 1, 2023, all accrued and unpaid interest on each Note shall be added to the principal balance of each Note. The new principal balance for each Investor and Note is listed below:

| Investor Name | Original Principal Balance | New Principal Balance |
|---|---|---|
| Robert Alpert | $25,000 | $28,795.77 |
| | $50,000 | $56,738.54 |
| | $50,000 | $56,599.12 |
| | $200,000 | $224,732.18 |
| | $150,000 | $168,549.18 |
| | $112,250 | $116,698.39 |
| Roman Alpert Trust | $150,000 | $168,742.41 |
| Don Sanders | $150,000 | $168,604.36 |
| Andy Cracchiolo | $150,000 | $168,493.91 |

| Elk Camp Ventures, LLC | $25,000 | $28,082.32 |
|---|---|---|
| Hyperion Investments, LLC | $50,000 | $56,164.64 |
| The R. David Hoover Revocable Trust dated January 30, 1997 as amended and restated September 14, 2012 | $100,000 | $112,255.64 |
| The James W. Taylor Revocable Living Trust dated September 25, 2001 | $50,000 | $56,127.82 |

22.    Finally, in the First Amendment the parties agreed that upon the occurrence of an Event of Default, the interest rate of each Note shall automatically, and without notice, increase to eighteen percent (18%).

23.    In or about May 2023, pursuant to a Second Amendment the Convertible Note Purchase Agreement (the "Second Amendment") the Purchase Agreement was again amended, such that the Maturity Date was extended to August 21, 2023. See Exhibit A-3.

24.    Defendant has failed and/or refused to pay Plaintiffs both the principal amount due under their respective Notes and the accrued interest due thereon by the amended Maturity Date of August 21, 2023. Each Plaintiff is currently due and owed the total amount of the principal loaned pursuant to each Note and the interest accruing thereon. Defendant's failure also constitutes an Event of Default as set forth in the Purchase Agreement trigger the automatic increase in the interest rate to eighteen percent (18%).

25.    Defendants' failure to repay the Plaintiffs is a breach of the Purchase Agreement and the Notes, and each Plaintiff is therefore entitled to judgment against Defendant in the amount of the principal loaned to Defendant plus interest accruing as of the date set forth in each Plaintiff's respective Note(s).

26.     On August 22, 2023, Plaintiffs sent correspondence to Defendant advising of the default on the Notes for the failure to pay as well as Defendant's failure to provide requested financial information as required by the Purchase Agreement. Since that date, Defendant has failed to pay any amounts due on the Notes or provide requested financial information as required by the Purchase Agreement and Notes.

27.     Instead of fulfilling any of its obligations under the Notes and Purchase Agreement, Defendant has attempted to mislead Plaintiffs including misrepresenting it had made a $2,000,000 wire transfer to Plaintiffs.

**COUNT I-BREACH OF CONTRACT**

28.     Plaintiffs reincorporate by reference the allegations set forth above as if fully rewritten herein.

29.     Defendant and Plaintiffs entered into and agreed to be bound by the Purchase Agreement (including its amendments) and the Notes for good and valuable consideration.

30.     The terms of the Purchase Agreement and the Notes required, *inter alia*, that Defendant repay each Plaintiff the principal amounts loaned plus interest accruing thereon by the Maturity Date of August 21, 2023.

31.     Defendant has breached the Purchase Agreement and Notes in that it has failed and/or refused to repay the principal amount loaned by each Plaintiff plus interest accruing from the date set forth in each Plaintiff's respective Note(s).

32.     Defendant also has breached the Purchase Agreement and Notes in that it has failed to provide accurate and adequate financial information.

33.     The Plaintiffs fully performed their obligations under the Purchase Agreement and Notes.

34.    As a direct and proximate result of Defendant's breach of contract, Plaintiffs have suffered damages in an amount greater than $25,000, plus costs, interest, and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a.    In favor of Robert Alpert in the amount $28,795.77, plus interest;

b.    In favor of Robert Alpert in the amount $56,738.54, plus interest;

c.    In favor of Robert Alpert in the amount $56,599.12, plus interest;

d.    In favor of Robert Alpert in the amount $224,732.18, plus interest;

e.    In favor of Robert Alpert in the amount $168,549.18, plus interest;

f.    In favor of Robert Alpert in the amount $116,698.39, plus interest;

g.    In favor of the Roman Alpert Trust in the amount $168,742.41, plus interest;

h.    In favor of Don Sanders in the amount $168,604.36, plus interest;

i.    In favor of Andy Cracchiolo in the amount $168,493.91, plus interest;

j.    In favor of Elk Camp Ventures, LLC in the amount $28,082.32, plus interest;

k.    In favor Hyperion Investments, LLC in the amount $56,164.64, plus interest;

l.    In favor of The R. David Hoover Revocable Trust dated January 30, 1997 as amended and restated September 14, 2012 in the amount $112,255.64 plus interest;

m.    In favor of The James W. Taylor Revocable Living Trust dated September 25, 2001 in the amount $56,127.82 plus interest;

n.    costs, reasonable attorneys' fees, and such other relief as this Court deems just and equitable.

Respectfully submitted,

*s/Robert D. Anderle*
Robert D. Anderle (0064582)
Clare C. Moran (0081134)
Seeley, Savidge, Ebert & Gourash, Co. LPA
26600 Detroit Road, Suite 300
Westlake, Ohio 44145
(216) 566.8200 | (216) 566.0213
rdanderle@sseg-law.com
cmoran@sseg-law.com

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

TRIAL BY JURY IS HEREBY DEMANDED ON ALL ISSUES SO TRIABLE.

*s/ Robert D. Anderle*
Robert D. Anderle (0064582)

# EXHIBIT A-1

## CONVERTIBLE NOTE PURCHASE AGREEMENT

This Convertible Note Purchase Agreement (this "*Agreement*") is entered into as of the 21ˢᵗ day of February, 2021 (the "*Effective Date*") between Felix Payment Systems Ltd., a British Columbia corporation (the "*Company*"), and the persons and entities listed on the schedule of investors attached hereto as **Schedule A** (each an "*Investor*" and, collectively, the "*Investors*"), as such **Schedule A** may be amended in accordance with this Agreement.

### RECITALS

**WHEREAS,** the Investors and the Company desire to enter into this Agreement with respect to certain funding transactions for the benefit of the Company on the terms and conditions set forth herein; and

**WHEREAS,** certain capitalized terms used herein shall have the meanings ascribed to them in Section 8.1 of this Agreement;

### AGREEMENT

**NOW, THEREFORE,** in consideration of the mutual promises, representations, warranties, covenants and conditions set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement mutually agree as follows:

### SECTION 1.
### TERMS OF THE NOTES

Section 1.1    General Description of the Notes.

(a)    On the Effective Date, the Company will issue to each Investor a convertible promissory note representing the loan to be made by such Investor at or prior to the Initial Closing (as hereinafter defined) in the principal amount set forth opposite such Investor's name on **Schedule A** hereto (each a "*Note*" and, collectively, the "*Notes*"), and, in accordance with Section 2.1(b), the Company will issue a convertible promissory notes representing the principal amounts of the loans to be made by the investors participating in any Additional Closing (as hereinafter defined) (each, an "*Additional Investor*"), in each case, in the form of Exhibit 1.1 attached hereto and pursuant to the terms and conditions of this Agreement and the Notes issued to Investors. Any Notes issued at an Additional Closing shall be deemed to be "*Notes*" under this Agreement and all Additional Investors shall be deemed to be "*Investors*" under this Agreement

(b)    Unless earlier converted into Equity Securities of the Company pursuant to the terms hereof, the aggregate outstanding principal amount of the Notes plus accrued and unpaid interest thereon shall be due and payable in full on the Maturity Date. The Notes shall bear interest (based on a 365-day year) on the unpaid principal amount thereof until due and payable at the rate of six percent (6%) per annum. In the event of any conflict between the terms of the Notes and the terms of this Agreement, the terms of this Agreement shall control.

Section 1.2    Payments and Endorsements. Payments of principal and interest on the Notes and other amounts due to each Investor with respect to the Obligations shall be made by certified check or wire

transfer of immediately available federal funds to the account designated in writing by such Investor, without any presentment or notation of payment.

Section 1.3    Repayments.

(a)    *Mandatory Repayments*. The full unpaid principal amount of the Notes, together with all accrued and unpaid interest thereon, shall be paid in full by the Company to the Investors on the earlier of (i) the Maturity Date, (ii) a Sale of the Company, and (iii) an Event of Default in which the Notes have been accelerated by the Investors or are automatically accelerated in accordance with the provisions of this Agreement.

(b)    *No Optional Prepayments*. The Company may not prepay the Notes without the prior written consent of the Requisite Investors.

(c)    *Application of Payment*. All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest on the Notes, and (iii) third, to the principal amount of the Notes.

Section 1.4    Replacement of the Notes. Upon receipt of evidence reasonably satisfactory to the Company of the loss, theft, destruction or mutilation of a Note and, if requested in the case of any such loss, theft or destruction, upon delivery of an indemnity bond or other agreement or security reasonably satisfactory to the Company, or, in the case of any such mutilation, upon surrender and cancellation of a Note, the Company will issue a new Note, of like tenor and amount and dated the date to which interest has been paid, in lieu of the lost, stolen, destroyed or mutilated Note; provided, however, if a Note is lost, stolen or destroyed, the affidavit of the Investor (or an authorized partner or officer of Investor) setting forth the circumstances with respect to such loss, theft or destruction shall be accepted as satisfactory evidence thereof.

Section 1.5    Security. The Notes are unsecured obligations of the Company.

Section 1.6    Conversion Rights and Obligations.

(a)    *Optional Conversion upon Equity Financing*. If, prior to the Maturity Date, the Company intends to consummate an Equity Financing, it shall provide the Investors with prior written notice of at least twenty (20) days, such notice to set out the material terms of the Equity Financing. Upon the consummation of such Equity Financing, the Investors may elect, upon the approval of the Requisite Investors, to convert the Notes (in whole or in part) into the number of shares of the Equity Securities issued by the Company pursuant to the Equity Financing equal to the greater of (i) the number of shares of the Equity Securities resulting from dividing (A) the outstanding principal and accrued but unpaid interest under the Notes to be converted by (B) eighty-five percent (85%) of the price per Equity Security (excluding conversion of the Notes) in the Equity Financing; or (ii) the number of shares of the Equity Securities resulting from dividing (A) the outstanding principal and accrued but unpaid interest under the Notes to be converted by (B) a price per Equity Security calculated prior to the Equity Financing using the Valuation Cap. Promptly after the closing of the Equity Financing, the Company shall deliver to the Investors written notices accompanied by any certificates representing the Equity Securities into which the Notes have been converted, registered in the name of the Investors, and against such delivery, the Investors shall surrender the Notes to the Company, duly endorsed to the Company or marked as cancelled. Each Investor shall also execute and deliver any securities purchase agreements, shareholders agreement or other equity agreements as are agreed to by the Investors, the Company and the other investors in the Equity Financing and the Investors shall receive the same rights (including, without limitation, information and access rights,

PAGE 2

preemptive rights, put or call rights, co-sale rights, registration rights and other investor rights and protective provisions) as any other investor in the Equity Financing.

(b)     *Optional Conversion prior to Maturity Date.* If not sooner repaid or converted in an Equity Financing prior to the Maturity Date, the Investors may elect, upon the approval of the Requisite Investors, to convert the entire unpaid principal and interest outstanding under the Notes into the number of Common Shares of the Company resulting from dividing (i) the outstanding principal and accrued but unpaid interest under the Notes; by (ii) a price per Equity Security calculated using the Valuation Cap. Promptly (and in any event within five (5) days of the Company's receipt of the written election by the Investors to convert pursuant to this Section 1.6(b), the Company shall deliver to Investors written notices accompanied by any certificate representing the Equity Securities into which the Note has been converted, registered in the name of the Investors, and against such delivery, Investors shall surrender the Note to the Company, duly endorsed to the Company or marked as cancelled. In the event of a conversion pursuant to this Section 1.6(b), the Company covenants and agrees to negotiate and enter into a shareholders agreement to include commercial terms typical for an institutional investment transaction.

(c)     *Optional Conversion upon the Occurrence of a Sale of the Company.* Notwithstanding any provision of this Agreement and the Notes to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of the Notes, (i) the Company shall notify Investors in writing not less than fifteen (15) days prior to the date on which the closing of the Sale of the Company is expected to occur, and (ii) Investors may elect, upon the approval of the Requisite Investors, with such election delivered to the Company at least five (5) days prior to the Sale of the Company, to convert the entire unpaid principal and interest outstanding under the Notes into the number of Common Shares of the Company resulting from dividing (A) the outstanding principal and accrued but unpaid interest under the Notes; by (B) a price per Equity Security calculated using the Valuation Cap. Promptly (and in any event within two (2) Business Days of the Company's receipt of such written election by the Investors to convert pursuant to this Section 1.6(c)), the Company shall deliver to Investors written notices accompanied by any certificate representing the Equity Securities into which the Notes have been converted, registered in the name of the Investors, and against such delivery, Investors shall surrender the Notes to the Company, duly endorsed to the Company or marked as cancelled.

(d)     *No Impairment.* The Company will not, through any reorganization, transfer of assets, issuance or sale of Equity Securities or otherwise, avoid or seek to avoid the observance or performance of any of the terms of this Section 1.6 or the other provisions of this Agreement and will at all times in good faith assist in the carrying out of the provisions hereof and in the taking of all actions as may be necessary in order to protect the conversion and other rights of the Investors hereunder against impairment

## SECTION 2.
## CLOSING

Section 2.1    Closings.

(a)     Subject to the satisfaction of the conditions set forth in SECTION 3. the sale and purchase of the initial Notes shall occur on the Effective Date (the *"Initial Closing"*); provided, that certain Notes issued at the Initial Closing relate to loans provided to the Company prior to the Effective Date. At the Initial Closing, the Company will deliver to Investors the initial Notes against delivery by Investors to the Company of the amount of the purchase price therefor by wire transfer of immediately available funds to the account specified in writing by the Company.

(b)     Subject to the satisfaction of the applicable conditions set forth in SECTION 3, the sale and purchase of the additional Notes shall occur on a date designated by the Requisite Investors at any

time and from time to time prior to the date which is six (6) months after the Effective Date (each an *"Additional Closing"* and, together with the Initial Closing, each a *"Closing"*). At each Additional Closing, the Company will deliver to Additional Investors the additional Notes against delivery by the Additional Investors to the Company of the amount of the purchase price therefor by wire transfer of immediately available funds to the account specified in writing by the Company. Unless agreed to by the Company, the aggregate principal amount of the Notes issued pursuant to this Agreement shall not exceed $1,000,000. Each Additional Investor shall become a party to this Agreement by executing and delivering to the Company an additional counterpart signature page to this Agreement and **Schedule A** hereto shall be updated to reflect the Notes purchased and sold in such Closing without any further action required on the part of the Company or any Investor

Section 2.2    Use of Proceeds. The proceeds from the sale of the Notes shall be used to provide interim working capital to (a) support the Company's development efforts and pilot program to seek card network approval and (b) provide the Company the timeline necessary to complete the Equity Financing.

## SECTION 3.
## CONDITIONS PRECEDENT TO OBLIGATIONS OF INVESTOR

Investor's obligation to purchase a Note shall be subject to the satisfaction of the following conditions precedent:

Section 3.1    Representations and Warranties. The representations and warranties of the Company in this Agreement are true and correct in all material respects at the time of the applicable Closing.

Section 3.2    Performance; No Default. The Company shall have performed and complied with all agreements and conditions contained in this Agreement required to be performed or complied with by it prior to or at the applicable Closing and after giving effect to the issue and sale of the Notes, no Event of Default shall have occurred and be continuing as of the applicable Closing.

Section 3.3    Intentionally Left Blank.

Section 3.4    No Injunctions. No injunction, preliminary injunction or temporary restraining order shall be threatened or shall exist as of the applicable Closing that prohibits or may prohibit the transactions contemplated by this Agreement, and no litigation or similar proceeding (including, without limitation, any litigation or other proceeding seeking injunctive or similar relief) shall be threatened or shall exist with respect to the transactions contemplated by this Agreement.

Section 3.5·    Documents. Investors shall have received in form and substance satisfactory to Investors each of the following:

(a)    Notes. Notes duly executed by the Company in favor of Investors.

(b)    Agreement. A counterpart of this Agreement duly executed by the Company.

(c)    Approvals and Consents. Copies of all required consents, authorizations, filings, licenses and approvals, if any, in connection with the execution, delivery and performance by the Company, and the validity and enforceability of, this Agreement and the Notes.

(d)    Closing Certificate. A certificate of an authorized officer of the Company, dated as of the applicable Closing, certifying on behalf of the Company that the closing conditions set forth in Section 3.1, Section 3.2 and Section 3.4 have been satisfied.

Section 3.6    Additional Closing Conditions.  As a condition to the obligation of Investors to consummate an Additional Closing, (a) the Company shall have performed and complied with all agreements and conditions contained in this Agreement required to be performed or complied with by it prior to or at an Additional Closing, and (b) the representations and warranties of the Company in this Agreement shall be true and correct in all material respects at the time of an Additional Closing.

## SECTION 4.
## REPRESENTATIONS AND WARRANTIES OF THE COMPANY

The Company represents and warrants to Investors that the following statements are true, correct and complete as of the Initial Closing and any Additional Closing:

Section 4.1    Organization, Good Standing, Corporate Power and Qualification.  The Company is a corporation duly organized, validly existing and in good standing under the laws of the Province of British Columbia, and has all requisite corporate power and authority to own and operate its properties and assets and to carry on its business as now conducted and as currently proposed to be conducted.  The Company is duly qualified and authorized to do business, and is in good standing as a foreign corporation, in each jurisdiction where the nature of its activities and of its properties (both owned and leased) makes such qualification necessary, except where the failure to be so qualified would not have a Material Adverse Effect upon the financial condition or operations of the Company or its properties.

Section 4.2    Capitalization.  The authorized capital of the Company consists, immediately prior to the Closing, of common shares (the "*Common Shares*"), 2,315,828 shares of which are issued and outstanding immediately prior to the Initial Closing.  All of the outstanding Common Shares have been duly authorized, are fully paid and nonassessable and were issued in compliance with all applicable federal and state securities laws.  Except for such outstanding Common Shares, there are no other issued and outstanding Equity Securities of the Company of any kind, class or character.  There are no outstanding or authorized subscriptions, options, warrants, rights, agreements or commitments to which the Company is a party or which are binding upon the Company providing for the issuance or redemption of any Equity Securities, or any options or rights with respect thereto.  There are no agreements to which the Company is a party or by which it is bound with respect to the voting, registration or the sale or transfer of any Equity Securities of the Company.  Upon any conversion of the Notes into Equity Securities of the Company as provided for in this Agreement, such Equity Securities will be duly authorized, validly issued, and free and clear of any Liens when issued in accordance with this Agreement and the Notes.

Section 4.3    Subsidiaries.  The Company does not currently own or control, directly or indirectly, any interest in any other corporation, partnership, trust, joint venture, limited liability company, association, or other business entity.  The Company is not, directly or indirectly, a participant in any joint venture or partnership.

Section 4.4    Authorization.  All corporate action required to be taken by the Company to authorize the Company to enter into this Agreement and to issue the Notes at the Closings has been taken.  All action on the part of the officers of the Company necessary for the execution and delivery of this Agreement, the performance of all obligations of the Company under this Agreement to be performed as of the Closings, and the issuance and delivery of the Notes has been taken.  This Agreement and the Notes, when executed and delivered by the Company, shall constitute valid and legally binding obligations of the Company, enforceable against the Company in accordance with their terms.

Section 4.5    Title to Properties and Assets.  The Company has good and marketable title to its properties and assets (except properties and assets held under capitalized leases) and has good title to all its leasehold interests, in each case subject to no Liens.  The tangible property and assets held by the Company

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

under any lease are held under leases that remain in force, and there exists no default or other occurrence or condition that could result in a default or termination thereunder.

Section 4.6    Material Liabilities. The Company has no material liability or obligation, absolute or contingent (individually or in the aggregate), except obligations and liabilities incurred in the ordinary course of business that are not individually or in the aggregate material or that are of a type or nature not required under GAAP to be reflected in financial statements. Neither the Company nor any officer of the Company has knowledge of any basis for any other material claim against or liability or obligation of the Company. The Company does not have any outstanding indebtedness for borrowed money.

Section 4.7    Obligations to Related Parties. There are no material liabilities or obligations, absolute or contingent (individually or in the aggregate), of the Company to officers, managers, members, or employees, including any member of their immediate families, other than (a) for payment of normal base salary for services rendered, (b) reimbursement of reasonable expenses incurred on behalf of the Company, and (c) for other standard employee benefits made generally available to all employees. None of the officers, managers, members, or employees of the Company, or any member of their immediate families, are indebted to the Company. No officer, manager or member, or any member of their immediate families, is, directly or indirectly, interested in any material contract with the Company (other than such contracts as relate to any such person's ownership of Common Shares or other securities of the Company).

Section 4.8    Litigation. There is no pending action, suit, proceeding, arbitration, mediation, complaint, claim, charge or investigation before any Governmental Authority, or to the Company's knowledge, currently threatened in writing (a) against the Company or (b) against any consultant, officer, manager, member or of the Company arising out of his or her consulting, employment or other relationship with the Company or that could otherwise materially impact the Company.

Section 4.9    Intellectual Property. The Company owns or possesses sufficient legal rights to all Intellectual Property (as defined below) that is necessary to the conduct of the Company's business as now conducted and as presently proposed to be conducted (the *"Company Intellectual Property"*) without any violation or infringement (or in the case of third-party patents, patent applications, trademarks, trademark applications, service marks, or service mark applications, without any violation or infringement known to the Company) of the rights of others. No product or service marketed or sold (or proposed to be marketed or sold) by the Company violates or will violate any license or infringes or will infringe any rights to any patents, patent applications, trademarks, trademark applications, service marks, trade names, copyrights, trade secrets, licenses, domain names, mask works, information and proprietary rights and processes (collectively, *"Intellectual Property"*) of any other party, except that with respect to third-party patents, patent applications, trademarks, trademark applications, service marks, or service mark applications the foregoing representation is made to the Company's knowledge only. Other than with respect to commercially available software products under standard end-user object code license agreements, there is no outstanding option, license, agreement, claim, encumbrance or shared ownership interest of any kind relating to the Company Intellectual Property, nor is the Company bound by or a party to any options, licenses or agreements of any kind with respect to the Intellectual Property of any other person. The Company has not received any written communications alleging that the Company has violated or, by conducting its business, would violate any of the Intellectual Property of any other person.

Section 4.10    Employee and Consultant Matters. Each current and former employee, consultant and officer of the Company has executed an agreement with the Company regarding confidentiality and proprietary information substantially in the form or forms delivered to the Investors. No current or former employee or consultant has excluded works or inventions from his or her assignment of inventions pursuant to such agreement. To the Company's knowledge, no such employees or consultants is in violation thereof. To the Company's knowledge, none of its employees is obligated under any judgment, decree, contract, covenant or agreement that would materially interfere with such employee's ability to promote the interest

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

of the Company or that would interfere with such employee's ability to promote the interests of the Company or that would conflict with the Company's business.

Section 4.11    Compliance with Other Instruments. The Company is not in violation or default (a) of any provisions of its Certificate of Incorporation or its bylaws, (b) of any judgment, order, writ or decree of any court or Governmental Authority, (c) under any agreement, instrument, contract, lease, note, indenture, mortgage or purchase order to which it is a party, or, (d) to its knowledge, of any provision of any law applicable to the Company. The execution, delivery and performance of this Agreement and the Notes and the consummation of the transactions contemplated hereby will not result in any such violation or default, or constitute, with or without the passage of time and giving of notice, either (i) a default under any such judgment, order, writ, decree, agreement, instrument, contract, lease, note, indenture, mortgage or purchase order or (ii) an event which results in the creation of any Lien upon any assets of the Company or the suspension, revocation, forfeiture, or nonrenewal of any material permit or license applicable to the Company.

Section 4.12    Material Agreements. Except for this Agreement and the Notes, there are no agreements, understandings, instruments, contracts or proposed transactions to which the Company is a party that involve (a) obligations (contingent or otherwise) of, or payments to, the Company in excess of $25,000, (b) the license of any Intellectual Property to or from the Company other than licenses with respect to commercially available software products under standard end-user object code license agreements or standard customer terms of service and privacy policies for Internet sites, (c) the grant of rights to manufacture, produce, assemble, license, market, or sell its products to any other person, or that limit the Company's exclusive right to develop, manufacture, assemble, distribute, market or sell its products, or (d) indemnification by the Company with respect to infringements of proprietary rights other than standard customer or channel agreements (each, a "*Material Agreement*"). The Company is not in material breach of any Material Agreement. Each Material Agreement is in full force and effect and is enforceable by the Company in accordance with its respective terms, except as may be limited by (i) applicable bankruptcy, insolvency, reorganization or others laws of general application relating to or affecting the enforcement of creditors' rights generally, or (ii) the effect of rules of law governing the availability of equitable remedies

Section 4.13    Offering. Assuming the accuracy of the representations and warranties of the Investors contained in SECTION 5. the offer, issuance and sale of the Notes and the Equity Securities into which such Notes are convertible (collectively, the "*Issued Securities*") are and will be exempt from the registration and prospectus delivery requirements under applicable law, and have been registered or qualified (or are exempt from registration and qualification) under the registration, permit or qualification requirements of all applicable state securities laws.

Section 4.14    Disclosure. No representation or warranty made by the Company in this Agreement or the Notes or any financial statement, certificate, Schedule or exhibit prepared and furnished or to be prepared and furnished by the Company or its representatives pursuant hereto contains or will contain any untrue statement of material fact, or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading in light of the circumstances under which they were furnished.

### SECTION 5.
### REPRESENTATIONS AND WARRANTIES OF INVESTORS

Each Investor, for that Investor alone, represents and warrants to the Company that as of the Initial Closing and any Additional Closing:

Section 5.1    Power and Authority. The Investor has the requisite capacity, power or authority to enter into this Agreement and to purchase the Note such Investor has agreed to purchase subject to all of the terms of this Agreement and the Note.

Section 5.2    Due Execution. This Agreement has been duly authorized, executed and delivered by the Investor, and, upon due execution and delivery by the Company, this Agreement will be a valid and legally binding obligations of the Investor, enforceable against the Investor in accordance with their terms.

Section 5.3    Investment Representations.

(a)    This Agreement is made with the Investor in reliance upon the Investor's representation to the Company, which by such its acceptance hereof the Investor hereby confirms, that the Issued Securities to be received by such Investor will be acquired for investment for such Investor's own account, not as a nominee or agent, and not with a view to the sale or distribution of any part thereof, and that such Investor has no present intention of selling, granting participation in, or otherwise distributing the same. By executing this Agreement, the Investor further represents that such Investor does not have any contract, undertaking, agreement, or arrangement with any person to sell, transfer or grant participations to such person, or to any third person, with respect to any of the Securities.

(b)    The Investor understands that the Issued Securities have not been registered under applicable law on the grounds that the sale provided for in this Agreement and the issuance of Issued Securities hereunder is exempt from registration under applicable law, and that the Company's reliance on such exemption is predicated in part on the Investor's representations set forth herein. The Investor realizes that the basis for the exemption may not be present if, notwithstanding such representations, the Investor has in mind merely acquiring the Issued Securities for a fixed or determined period in the future, or for a market rise, or for sale if the market does not rise. The Investor does not have any such intention.

(c)    The Investor represents and warrants that: (i) such Investor's financial situation is such that such Investor can afford to bear the economic risk of holding the Issued Securities purchased by such Investor for an indefinite period of time and suffer a complete loss of such Investor's investment in the Issued Securities; (ii) such Investor's knowledge and experience in financial and business matters are such that such Investor is capable of evaluating the merits and risks of such Investor's purchase of the Issued Securities as contemplated by this Agreement; (iii) such Investor understands that such Investor's purchase of the Issued Securities is a speculative investment; (iv) the purchase of the Issued Securities by such Investor has been duly and properly authorized and this Agreement has been duly executed by such Investor or on such Investor's behalf, and constitutes such Investor's valid and legally binding obligation enforceable in accordance with its terms; and (v) such Investor has had an opportunity to ask questions and receive answers from the Company regarding the terms and conditions of the sale of the Issued Securities.

(d)    The Investor understands that the Issued Securities may not be sold, transferred or otherwise disposed of without registration under applicable law or an exemption therefrom, and that in the absence of an effective registration statement covering the Issued Securities or an available exemption from registration under applicable law, the Issued Securities must be held indefinitely. The Investor represents that, in the absence of an effective registration statement covering the Issued Securities such Investor will sell, transfer, or otherwise dispose of the Issued Securities only in a manner consistent with the representations set forth herein.

(e)    The Investor agrees that in no event will such Investor make a transfer or disposition of any of the Issued Securities (other than pursuant to an effective registration statement under applicable law), unless and until (i) such Investor shall have notified the Company of the proposed disposition and shall have furnished the Company with a statement of the circumstances surrounding the disposition, and (ii) if requested by the Company, at the expense of such Investor or transferee, such

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

Investor shall have furnished to the Company an opinion of counsel, reasonably satisfactory to the Company, to the effect that such transfer may be made without registration under applicable law. Notwithstanding the provisions of this Section 5.3(e), no such opinion shall be required in the case of transfers made by the Investor to an Affiliate of such Investor.

(f)     The Investor understands that each certificate representing the Equity Securities into which such Notes are convertible will be endorsed with a legend substantially as follows:

> THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER APPLICABLE SECURITIES LAWS. THESE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO DISTRIBUTION OR RESALE, AND MAY NOT BE SOLD, MORTGAGED, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT FOR SUCH SECURITIES UNDER APPLICABLE SECURITIES LAWS, OR THE AVAILABILITY OF AN EXEMPTION FROM THE REGISTRATION UNDER APPLICABLE SECURITIES LAWS.

Section 5.4     Government Consents.  No consent, approval or authorization of or designation, declaration or filing with any state, federal, or foreign governmental authority on the part of the Investor because of any special characteristic of the Investor is required in connection with the valid execution and delivery of this Agreement by the Investor, and the consummation by the Investor of the transactions contemplated hereby and thereby; provided, however, that the Investor makes no representations as to the Company's compliance with applicable state securities laws.

Section 5.5     Litigation.  There is no claim, action, suit, proceeding, complaint, charge or investigation pending or, to Investor's knowledge, threatened against Investor before any court or administrative agency or that questions the validity of this Agreement or the right of Investor to enter them or consummate the transactions contemplated by them.

## SECTION 6.
## EVENTS OF DEFAULT AND REMEDIES

Section 6.1     Events of Default.  The occurrence or existence of any one or more of the following events shall constitute an *"Event of Default"*:

(a)     The failure by the Company to pay the principal amount of any Note or interest accrued thereon when due, and such non-payment continues for a period of five (5) calendar days thereafter;

(b)     The material breach by the Company of any representation, warranty or covenant of the Company in this Agreement or any Note, and, in the case of a breach of any such covenant, the failure of the Company to cure such breach within ten (10) calendar days after receipt of written notice thereof;

(c)     The commencement by or against the Company of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceedings under any federal or applicable state law that remains un-dismissed for a period of ninety (90) days; and

(d)     The cessation of the Company's business operations.

Section 6.2     Remedies of the Investors Agent upon Occurrence of Event of Default.  Upon the occurrence of an Event of Default (other than an Event of Default described in Section 6.1(c) or Section 6.1(d)), the Investors may, by written notice to the Company, declare the entire amount of the Obligations, including, without limitation, the entire principal and all accrued interest then outstanding under the Notes,

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
PPA670130304v3
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

to be, and the same shall thereupon become, immediately due and payable in full by the Company. When any Event of Default described in Section 6.1(c) or Section 6.1(d) shall occur, the entire amount of the Obligations, including, without limitation, the entire principal and all accrued interest then outstanding under the Notes shall thereupon become immediately due and payable without notice of any kind (including any notice by or consent of the Investor), which notice is hereby expressly waived by the Company.

Section 6.3    Annulment of Acceleration.  The provisions of the foregoing Section 6.2 are subject to the condition that, if all or any part of the Obligations have been declared or have otherwise become immediately due and payable by reason of the occurrence of any Event of Default, the Investors, by written instrument delivered to the Company (an "**Annulment Notice**"), may, in the Investors' sole discretion, rescind such declaration and the consequences thereof as to all of the Notes; provided that at the time such Annulment Notice is delivered no judgment or decree has been entered for the payment of any monies due pursuant to such Obligations in connection therewith and no such action shall constitute a waiver of any right to accelerate the Notes in the future as a result of the same Event of Default or any subsequent Event of Default.

Section 6.4    Remedies.  No right or remedy conferred upon or reserved to the Investors under this Agreement or the Notes is intended to be exclusive of any other right or remedy, and every right and remedy shall be cumulative and in addition to every other right or remedy given hereunder or now or hereafter existing under the Notes, or under applicable law.  Every right and remedy given by this Agreement and the Notes, or under applicable law to the Investor may be exercised from time to time and as often as may be deemed expedient by the Investor, subject to the provisions of Section 6.2 and Section 6.3.

Section 6.5    Conduct No Waiver.  No course of dealing on the part of the Investors, or any delay or failure on the part of any Investor to exercise any of such Investor's rights, shall operate as a waiver of such right or remedy or otherwise prejudice such Investor's rights, powers and remedies.  If the Company fails to pay, when due (after, to the extent specifically required or provided for hereunder, notice and expiration of any applicable cure period), the principal of, or the interest on, the Notes, or fails to comply with any other provision of this Agreement, the Company shall pay to each applicable Inventor, on demand, such additional amounts as are necessary to cover the out-of-pocket costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred by such Investor in enforcing the Notes and/or collecting any sums due on the Notes or in otherwise enforcing such Investor's rights under this Agreement or the Notes.

Section 6.6    Indemnification.  The Company shall indemnify, defend, and hold harmless the Investors and their respective agents, officers, employees and representatives from all claims and suits for damages or loss, and from all judgments recovered therefor and for expenses in defending any such claims or suits, including court costs, attorneys' fees, and for any other expenses caused by an act or omission of the Company or its contractors, agents, officers or employees in connection with performance of this Agreement and the Notes.

### SECTION 7.
### COVENANTS AND AGREEMENTS.

Section 7.1    Reimbursement of Fees.  The Company shall be responsible for (a) the fees and expenses of attorneys, accountants, consultants and any other representative or agent retained by the Investors in regard to this Agreement and (b) the outstanding fees owed to Polsinelli of approximately $5,250 for intellectual property legal services, and all such fees and expenses shall be paid by the Company from the proceeds of the Initial Closing on or promptly following the Initial Closing.

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

Section 7.2    Negative Covenants. The Company covenants and agrees, that for so long as any Note is outstanding, the Company shall not, either directly or indirectly by amendment, merger, consolidation or otherwise, do any of the following without the written consent or affirmative vote of the Investors, consenting, and any such act or transaction entered into without such consent or vote shall be null and void *ab initio*, and of no force or effect:

(a)    repurchase or redeem any of the Company's Equity Securities or make, pay or declare and distribution upon any of the Company's Equity Securities;

(b)    sell, assign, grant an exclusive license, pledge or encumber material assets, technology or intellectual property of the Company or any subsidiary other than in the ordinary course of business;

(c)    sell, assign, grant a license, pledge or encumber any of the Company's rights, title and interest in and to the assets relating to the Felix patented online technology infrastructure and the associated software system, the resulting transaction services, any products derived for resale or license from the Felix technology, including but not limited to, Felix Cloud, Felix Terminal and Felix Checkout, and any contracts serving third parties such as Sightline (collectively, the "Payfelix Platform");

(d)    liquidate or dissolve, merge, amalgamate or consolidate with or into, acquire any business organization or sell or issue any Equity Securities (other than in connection with an Equity Financing);

(e)    create, grant or suffer the existence of any lien, encumbrance or other security interest, other than a Permitted Lien, with respect to any of the material properties and assets of the Company in favor of a third party (a "Third Party Lien") unless the Company shall have first granted to the holders of the Notes a *pro rata* security interest with respect to such properties or assets that is senior to such Third Party Lien, including priority right of payment; or

(f)    incur any indebtedness for borrowed money, other than (i) pursuant to Notes issued under this Agreement or (ii) in the ordinary course of business, unless such indebtedness is and remains subordinate in right of payment to the Notes pursuant to a subordination agreement on terms satisfactory to the Investors.

As used herein, "Permitted Lien" means any (i) purchase money liens or purchase money security interests upon or in any property acquired by the Company, (ii) lien for taxes, assessments, or similar charges not yet due and payable and (iii) lien of materialmen, mechanics, warehousemen or other like lien arising securing obligations which are not yet delinquent; provided, that (A) the applicable obligation arises in the ordinary course of business, (B) in the case of (ii) and (iii), reserves are maintained with respect to such obligations in accordance with generally accepted accounting principles, (C) such lien or security interest is not created in connection with the borrowing of money and (D) such lien or security interest does not individually or in the aggregate materially detract from the value, use, or transferability of the assets that are subject to such lien or security interest.

Section 7.3    Delivery of Financial Statements. The Company covenants and agrees, that for so long as any Note is outstanding, the Company shall, within fifteen (15) days after March 31, June 30, September 30 and December 31, delivery to the Investors a consolidated balance sheet of the Company and its subsidiaries as of the end of each such quarterly period, and consolidated statements of income and cash flows of the Company and its subsidiaries for such period and for the current fiscal year to date, prepared in accordance with GAAP (except as disclosed in reasonable detail therein and subject to normal year-end audit adjustments and the absence of notes thereto).

Section 7.4    Board Representation.  Robert Alpert, on behalf of the Investors, shall have the right to designate one member to serve on the board of directors of the Company and the Company shall take such action, including shareholder approval, to cause such member to be appointed to such board.

Section 7.5    Recurring Revenue Threshold.  In the event the Company believes that the Recurring Revenue Threshold has been achieved as of December 31, 2021, it will prepare (or cause to be prepared) and deliver to the Investors a statement of the Company's calculations of the Recurring Revenues and the various components thereof (the "*Recurring Revenue Statement*").  Within the twenty (20) day period after delivery by the Company of the Recurring Revenue Statement, the Investors will, in a written notice to the Company, either accept the Recurring Revenue Statement, or, in the event that the Investors believe that the Recurring Revenue Statement is inaccurate, describe in reasonable detail any proposed adjustments to the Recurring Revenue Statement which the Investors believe should be made and the basis therefor.  If the Company has not received such notice of proposed adjustments within such twenty (20) day period, the Recurring Revenue Statement will be deemed to have been accepted and agreed to by the Investors in the form in which such Recurring Revenue Statement is delivered by the Company and will be final and binding on the Company and the Investors.  The Company and the Investors will negotiate in good faith to resolve any dispute over the Investors' proposed adjustments to Recurring Revenue Statement, provided that if any such dispute is not resolved within twenty (20) days following receipt by the Company of the proposed adjustments, the Company and the Investors jointly will select (or, if the Company and the Investors are unable to agree, the American Arbitration Association will select) an independent accounting firm which has not had a material relationship with the Company, Sellers or any of their respective Affiliates within two (2) years preceding such selection (such firm, the "*Accounting Firm*") to resolve by arbitration any remaining dispute over the Investors' proposed adjustments.  The Accounting Firm will resolve the items in dispute and render a written report on the resolved disputed items (and only on those disputed items) within thirty (30) days after the date on which they are engaged or as soon thereafter as possible.  In resolving any disputed item, the Accounting Firm may not assign a value to any item greater than the greatest value for such item claimed by the Company or the Investors or less than the smallest value for such item claimed by the Company or the Investors.  The resolution of the dispute by the Accounting Firm will be final and binding upon the Company and the Investors except in the case of fraud or manifest clerical error, and judgment may be entered on the award.  The cost of the services of the Accounting Firm will be allocated by the Accounting Firm between the Company and the Investors in the same proportion that the aggregate amount of such resolved disputed items so submitted to the Accounting Firm that is unsuccessfully disputed by each such party (as finally determined by the Accounting Firm) bears to the total amount of such resolved disputed items so submitted.

## SECTION 8.
## INTERPRETATION OF AGREEMENT

Section 8.1    Certain Terms Defined.  When used in this Agreement, the following capitalized terms shall have the meanings included:

"*Affiliate*" means, with respect to any Person, (a) a Person that, directly or indirectly, or through one or more intermediaries, controls such Person, (b) any Person that is controlled by, or is under common control with, such Person, and/or (c) each of such Person's officers or directors (or Persons functioning in substantially similar roles) and the spouses, parents, descendants and siblings of such officers, directors or other Persons.  A Person shall be deemed to control a Person if such Person possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"*Business Day*" means each day of the week except Saturdays, Sundays and days on which banking institutions are authorized by law to close in the State of Ohio.

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
PPAB 676305843
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

"*Equity Financing*" means a bona fide transaction or series of transactions with the principal purpose of raising capital, pursuant to which the Company issues and sells Equity Securities and from which the Company receives gross proceeds of at least $5,000,000.00 (excluding, for the avoidance of doubt, the principal amount and accrued interest under the Notes).

"*Equity Securities*" means any (a) capital shares of the Company, (b) any securities conferring the right to purchase capital shares of the Company, and (c) any securities directly or indirectly convertible into, or exchangeable for (with or without additional consideration) capital shares of the Company.

"*GAAP*" means generally accepted accounting principles, applied on a consistent basis, as set forth in Opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants or in statements of the Financial Accounting Standards Board or their respective successors and that are applicable in the circumstances as of the date in question.

"*Governmental Authority*" means the government of any nation, province, state, city or locality or other political subdivision of any thereof, or any entity, authority, agency, division, department or person exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to any government, regulation or compliance.

"*Indebtedness*" means for any Person: (a) all indebtedness, whether or not represented by bonds, debentures, notes, securities or other evidences of indebtedness, for the repayment of money borrowed, and (b) all indebtedness secured by liens on the Company's property other than Permitted Liens.

"*Lien*" means any lien, mortgage, security interest, tax lien, pledge, encumbrance, conditional sale or title retention agreement or any other interest in property designed to secure the repayment of Indebtedness or any other obligation, whether arising by agreement, operation of law or otherwise.

"*Material Adverse Effect*" means (a) a material adverse effect on the business, operations, properties, assets or financial condition of the Company, or (b) the material impairment of the ability (i) of the Company to perform its obligations under this Agreement or the Notes or (ii) of Investors to enforce or collect any of the Obligations.

"*Maturity Date*" means the date of the eighteen (18) month anniversary of the Effective Date.

"*Obligations*" means any and all Indebtedness, financial liabilities or payment of the Company to the Investors of the Notes of every kind, nature and description, direct or indirect, secured or unsecured, joint, several, joint and several, absolute or contingent, due or to become due, now existing or hereafter arising, under this Agreement, including without limitation all indebtedness and obligations evidenced by the Notes, together with all renewals, modifications, extensions, increases, substitutions or replacements of any of such Indebtedness.

"*Permitted Liens*" means (a) Liens securing purchase money Indebtedness and capitalized lease obligations incurred to finance the acquisition of capital assets by the Company, (b) Liens for taxes not yet due or being contested in good faith by appropriate proceedings diligently conducted, against which adequate reserves in accordance with GAAP have been established to the reasonable satisfaction of the Investors, (c) materialmen's, mechanics', workers', repairmen's, employees' or other like Liens arising against the Company in the ordinary course of business, and (d) deposits to secure payment of worker's compensation, unemployment insurance or other social security benefits.

"*Person*" means any individual, sole proprietorship, corporation, limited liability company, business trust, unincorporated organization, association, company, partnership, joint venture,

Governmental Authority (whether national, federal, state, county, municipality or otherwise, and including, without limitation, any instrumentality, division, agency, body or department thereof) or other entity.

"**_Recurring Revenues_**" means newly generated contractual recurring revenues of the Company (and not any Affiliate of the Company) that are verifiable and predictable, with a margin of not less than ninety (90%), and which are attributable to the Payfelix Platform. Such Recurring Revenues will be calculated as of 11:59 p.m. eastern time on December 31, 2021 and in accordance with GAAP, and as reflected in the financial statements of the Company.

"**_Recurring Revenues Threshold_**" means Recurring Revenues of at least $2,500,000.

"**_Requisite Investors_**" means the holders of Notes representing at least fifty percent (50%) of the aggregate principal amount of the Notes at the time outstanding.

"**_Sale of the Company_**" means (a) a transaction or series of related transactions in which any "person" or "group" (within the meaning of Section 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended), becomes the "beneficial owner" (as defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended), directly or indirectly, of more than 50% of the outstanding Equity Securities having the right to vote for the election of members of the Company's managers, (b) any reorganization, merger or consolidation of the Company, other than a transaction or series of related transactions in which the holders of the voting Equity Securities outstanding immediately prior to such transaction or series of related transactions retain, immediately after such transaction or series of related transactions, at least a majority of the total voting power represented by the outstanding voting Equity Securities or such other surviving or resulting entity or (c) a sale, lease, license or other disposition of all or substantially all of the assets of the Company.

"**_Valuation Cap_**" means (a) a fully-diluted (including any convertible or exchangeable Equity Securities, but excluding the Notes) enterprise valuation of the Company of $5,000,000, or (b) in the event the Recurring Revenue Threshold is achieved, a fully-diluted (including any convertible or exchangeable Equity Securities, but excluding the Notes) enterprise valuation of the Company of $10,000,000.

Terms that are defined in other Sections of this Agreement shall have the meanings specified therein.

Section 8.2    References.    When used in this Agreement, the words "hereof," "herein," "hereunder" and words of similar import shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and the words "Article," "Section," "subsection," "clause," "Annex," "Schedule" and "Exhibit" refer to Articles, Sections, subsections and clauses of, and Annexes, Schedules and Exhibits to, this Agreement unless otherwise specified.    As used herein the neuter gender shall be deemed to include the masculine and feminine gender.

### SECTION 9.
### MISCELLANEOUS

Section 9.1    Notices.    All notices and other communications under this Agreement must be in writing and are deemed duly delivered when (a) delivered if delivered personally or by nationally recognized overnight courier service (costs prepaid), (b) sent by electronic email with confirmation of transmission by the transmitting equipment (or, the first Business Day following such transmission if the date of transmission is not a Business Day) or (c) received or rejected by the addressee, if sent by certified mail, return receipt requested; in each case to the following addresses or emails and marked to the attention of the individual (by name or title) designated below (or to such other address, email or individual as a party may designate by notice to the other parties):

If to the Company:                          Felix Payment Systems Ltd.
                                            250 Howe St, Level 20
                                            Suite 100-218
                                            Vancouver, BC V6C 3RB
                                            Attention: Owen Newport
                                            Email: owen.newport@payfelix.com

If to the Investors:                        Felix Payment Investors
                                            35 Littles Point Rd.
                                            E-302
                                            Swampscott, MA 01907
                                            Attn: Robert Alpert
                                            Email: robert@danro.com

Section 9.2    Assignment, Sale of Interest.  The Company may not sell, assign or transfer this Agreement or the Notes, or any portion thereof, or such party's rights and obligations hereunder or thereunder, without the prior written consent of the Requisite Investors. Each Investor may sell, assign or transfer any of such Investor's rights and obligations under this Agreement or the Notes (subject to the transfer restrictions contained in the Notes and/or described in Section 5.3(d), Section 5.3(e) and Section 5.3(f)), or any portion hereof or thereof, including, without limitation, such Investor's rights, title, interests, remedies, powers or duties hereunder or under the Notes.

Section 9.3    Successors and Assigns.  This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.

Section 9.4    Headings.  The headings of the sections and subsections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

Section 9.5    Counterparts.  The parties may execute this Agreement in multiple counterparts, each of which constitutes an original as against the party that signed it, and all of which together constitute one agreement. The signatures of all parties need not appear on the same counterpart. The delivery of signed counterparts by facsimile or email transmission that includes a copy of the sending party's signature is as effective as signing and delivering the counterpart in person.

Section 9.6    Integration and Severability.  This Agreement, together with the Notes, embodies the entire agreement and understanding between the Company and Investors regarding the transactions contemplated therein and supersedes all prior agreements and understandings relating to the subject matter hereof. Any invalidity, illegality or limitation of the enforceability with respect to any one or more of the provisions of this Agreement, or any part thereof, shall in no way affect or impair the validity, legality or enforceability of any other provisions of this Agreement. In case any provision of this Agreement shall be invalid, illegal or unenforceable, it shall, to the extent practicable, be modified so as to make it valid, legal and enforceable and to retain as nearly as practicable the intent of the parties, and the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 9.7    Further Assurances.  From and after the date of this Agreement, upon the request of the Investors, the Company shall execute and deliver such agreements, instruments, documents and other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purposes of this Agreement and the Notes.

Section 9.8    Amendments, Waivers and Consents.  Any provision in this Agreement or in the Notes to the contrary notwithstanding, changes in or additions to this Agreement or the Notes may be made, and compliance with any covenant or provision set forth herein or therein by any party may be omitted or

waived, only with the prior written consent of both parties. Any waiver or consent may be given subject to satisfaction of conditions stated therein and any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it is given.

Section 9.9    Law Governing; Jurisdiction.  The laws of Ohio (without giving effect to its conflicts of law principles) govern this Agreement and all matters arising out of or relating to this Agreement and the transactions contemplated hereby.  The parties hereto hereby irrevocably submit to the exclusive jurisdiction of the federal or state courts of the State of Ohio over any proceeding arising out of or relating to this Agreement or any of the transactions contemplated hereby and each party hereby irrevocably agrees that all claims in respect of such proceeding may be heard and determined in such courts. The parties hereto hereby irrevocably waive any objection which they may now or hereafter have to the laying of venue of any proceeding brought in such courts or any claim that such proceeding brought in such courts has been brought in an inconvenient forum.  Each of the parties hereto agrees that a judgment in such proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.  Each of the parties hereto hereby irrevocably consents to process being served by any other party to this Agreement in any proceeding by delivery of a copy thereof in accordance with the provisions of Section 9.1.

**[Signature Pages Follow]**

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
IPAB 61 3050dv3
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed and delivered by its respective officers thereunto duly authorized.

**COMPANY:**                           **FELIX PAYMENT SYSTEMS LTD.**

DocuSigned by:

*owen newport*

By: _____
3011BC6DB00A492...

Name:  Owen Newport
Title: Chief Executive Officer

**INVESTOR:**

DocuSigned by:

Robert Alpert

Robert Alpert

Electronically Filed 11/27/2023 16:45 /  / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

## SCHEDULE A

## SCHEDULE OF INVESTORS

| Name and Address | Date of Investment | Principal Amount |
|---|---|---|
| Robert Alpert<br>12802 North Scottsdale Road<br>Scottsdale, AZ 85252<br>robert@danro.com | 9/21/2020 | $25,000 |
| | 12/21/2020 | $50,000 |
| | 1/5/2021 | $50,000 |
| | 2/19/2021 | $200,000 |
| | 2/19/2021 | $150,000 |
| Roman Alpert Trust<br>12802 North Scottsdale Road<br>Scottsdale, AZ 85252<br>roman.alpert@gmail.com | 2/12/2021 | $150,000 |
| Don Sanders<br>5900 JP Morgan Chase Tower<br>600 Travis, Suite 5800<br>Houston, TX 77002<br>Don.Sanders@smhgroup.com | 2/17/2021 | $150,000 |
| Andy Cracchiolo<br>3219 East Camelback Rd #785<br>Phoenix, AZ 85018<br>ac@cracchiolo.net | 2/21/2021 | $150,000 |
| Elk Camp Ventures, LLC<br>8 The Green, Suite R<br>Dover, DE 19901<br>Attention: Matt Emerman<br>mattemerman@gmail.com | 2/21/2021 | $25,000 |
| Hyperion Investments, LLC<br>1720 Magoffin Ave<br>El Paso, TX 79901<br>Attention: Lane Gaddy<br>lbgaddy@gmail.com | 2/21/2021 | $50,000 |
| James Taylor Irrevocable Trust<br>181 Elmwood Avenue Ext<br>Gloversville, New York 12078<br>seamus@calliope1.com | 2/25/21 | $50,000 |
| The R. David Hoover Revocable Trust dated<br>January 30, 1997 as amended and restated<br>September 14, 2012<br>7209 Rustic Trail<br>Boulder, CO 80301<br>rdavidhoover@msn.com | 2/25/21 | $100,000 |
| | TOTAL | $1,150,000 |

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

**EXHIBIT 1.1**
**TO**
**CONVERTIBLE NOTE PURCHASE AGREEMENT**

Form of Note

*(See attached.)*

.

.

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

# EXHIBIT A-2

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

## FIRST AMENDMENT TO CONVERTIBLE NOTE PURCHASE AGREEMENT

This First Amendment to Convertible Note Purchase Agreement (this "*Amendment*") is entered into as of the 5th day of February, 2023 (the "*Effective Date*") between Felix Payment Systems Ltd., a British Columbia corporation (the "*Company*"), and the persons and entities listed on the schedule of investors attached hereto as **Schedule A** (each an "*Investor*" and, collectively, the "*Investors*"), as such **Schedule A** may be amended in accordance with the Convertible Note Purchase Agreement dated February 21, 2021 (the "*Agreement*").

### RECITALS

**WHEREAS**, the Investors and the Company desire to enter into this Amendment to amend the Agreement on the terms and conditions set forth herein; and

**WHEREAS**, certain capitalized terms used herein shall have the meanings ascribed to them in the Agreement;

### AGREEMENT

**NOW, THEREFORE,** in consideration of the mutual promises, representations, warranties, covenants and conditions set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement mutually agree as follows:

1.      The definition of Maturity Date in the Agreement is deleted in its entirety and replaced with the following:

"*Maturity Date*" means May 21, 2023.

2.      Section 6.2 of the Agreement is amended by adding the following sentence to the end of Section 6.2:

Upon the occurrence of an Event of Default, the interest rate of each Note shall automatically, and without notice, increase to eighteen percent (18%).

3.      Effective February 1, 2023, all accrued and unpaid interest on each Note shall be added to the principal balance of each Note (i.e. capitalized) as set forth below.

| Noteholder | Principal Balance | Start Date of Interest | Accrued Interest through and including January 31, 2023 | New Principal Balance effective February 1, 2023 |
|---|---|---|---|---|
| Robert Alpert | $25,000.00 | 9/21/20 | $3,795.77 | $28,795.77 |
| Robert Alpert | $50,000.00 | 12/21/20 | $6,738.54 | $56,738.54 |
| Robert Alpert | $50,000.00 | 1/5/21 | $6,599.12 | $56,599.12 |

| | | | | |
|---|---|---|---|---|
| Robert Alpert | $200,000.00 | 2/19/21 | $24,732.18 | $224,732.18 |
| Robert Alpert | $150,000.00 | 2/19/21 | $18,549.13 | $168,549.18 |
| Robert Alpert | $112,250.00 | 6/8/22 | $4,448.39 | $116,698.39 |
| Roman Alpert Trust | $150,000.00 | 2/12/21 | $18,742.41 | $168,742.41 |
| Don Sanders | $150,000.00 | 2/17/21 | $18,604.36 | $168,604.36 |
| Andy Cracchiolo | $150,000.00 | 2/21/21 | $18,493.91 | $168,493.91 |
| Elk Camp Ventures, LLC | $25,000.00 | 2/21/21 | $3,082.32 | $28,082.32 |
| Hyperion Investments, LLC | $50,000.00 | 2/21/21 | $6,164.64 | $56,164.64 |
| The R. David Hoover Revocable Trust dated January 30, 1997 as amended and restated September 14, 2012 | $100,000.00 | 2/25/21 | $12,255.64 | $112,255.64 |
| The James W. Taylor Revocable Living Trust dated September 25, 2001 | $50,000.00 | 2/25/21 | $6,127.82 | $56,127.82 |

4.    Within forty-five (45) days of execution of this Amendment, Company shall provide Investors with all of the information required under Section 7.3 of the Agreement, copies of all representations made by the Company to third-parties concerning the Company's financial condition, and such other financial information reasonably requested by Investors. Within fifteen (15) days of execution of this Amendment, Company shall provide Investors with a schedule of all current shareholders and debtholders.

[Signature Pages Follow]

Electronically Filed 07/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB

Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by its respective officers thereunto duly authorized.

COMPANY:

FELIX PAYMENT SYSTEMS LTD.

By _owen newport_

Name: Owen Newport

Title: Chief Executive Officer

**INVESTORS:**

DocuSigned by:

*Robert Alpert*

Robert Alpert

DocuSigned by:

*Roman Alpert*

Roman Alpert Trust

By: Roman Alpert

Title: Trustee & Beneficiary

DocuSigned by:

*Don Sanders*

Don Sanders

DocuSigned by:

*Andy Cracchiolo*

Andy Cracchiolo

DocuSigned by:

Elk Camp Ventures, LLC

By: Elk

Title: Founding Member

DocuSigned by:

*Lane Gaddy*

Hyperion Investments, LLC

By: Lane Gaddy

Title: Manager

PAGE 4

DocuSigned by:

*R. David Hoover*

The R. David Hoover Revocable Trust dated
January 30, 1997 as amended and restated
September 14, 2012

By: R. David Hoover _____

Title: Trustee _____

DocuSigned by:

*Jim MTL*

The James W. Taylor Revocable Living Trust
dated September 25, 2001

By: Seamus _____

Title: Trustee _____

PAGE 5

**DocuSign**

## Certificate Of Completion

Envelope Id: 3BBD539CA258476988D405032A698507
Subject: Complete with DocuSign: First Amendment to Note.PDF
Client Matter Number:
Source Envelope:
Document Pages: 5                          Signatures: 8                    Envelope Originator:
Certificate Pages: 6                       Initials: 0                      Brian Darer
AutoNav: Enabled                                                            620 South Tryon Street
EnvelopeId Stamping: Disabled                                              Suite 800
Time Zone: (UTC-05:00) Eastern Time (US & Canada)                          Charlotte, NC 28202
                                                                           briandarer@parkerpoe.com
                                                                           IP Address: 66.194.17.46

## Record Tracking

Status: Original                           Holder: Brian Darer            Location: DocuSign
       2/6/2023 11:53:10 AM                briandarer@parkerpoe.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Andy Cracchiolo<br>ac@cracchiolo.net<br>Security Level: Email, Account Authentication (None) | *Andy Cracchiolo*<br>6D7029A8AD3244†...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 174.205.230.127<br>Signed using mobile | Sent: 2/6/2023 12:00:31 PM<br>Viewed: 2/7/2023 12:25:16 PM<br>Signed: 2/7/2023 12:25:30 PM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 2/7/2023 12:25:16 PM<br>   ID: 1bd9b6d6-fd39-4915-b29f-67c776f849a1 | | |
| Don Sanders<br>don.sanders@smhgroup.com<br>Individual Owner<br>Security Level: Email, Account Authentication (None) | *Don Sanders*<br>C013474DARD4D6...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 96.154.47.218 | Sent: 2/6/2023 12:00:32 PM<br>Viewed: 2/6/2023 4:02:27 PM<br>Signed: 2/6/2023 4:02:34 PM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 2/6/2023 4:02:27 PM<br>   ID: 259bd00e-6260-4d70-938e-9224fa9941fc | | |
| Elk<br>mattemerman@gmail.com<br>Founding Member<br>Elk Camp Ventures, LLC<br>Security Level: Email, Account Authentication (None) | 26815D1A4A5242D...<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 96.250.105.197 | Sent: 2/6/2023 12:00:32 PM<br>Viewed: 2/6/2023 12:23:14 PM<br>Signed: 2/6/2023 12:23:41 PM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 2/6/2023 12:23:14 PM<br>   ID: 0e1e45e4-392c-4f2c-820e-5c27d769fa0f | | |
| Lane Gaddy<br>lbgaddy@gmail.com<br>Manager<br>Security Level: Email, Account Authentication (None) | *Lane Gaddy*<br>69D43AF3F93E416...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 70.125.230.218 | Sent: 2/6/2023 12:00:33 PM<br>Viewed: 2/6/2023 12:02:35 PM<br>Signed: 2/6/2023 12:04:00 PM |

**Electronic Record and Signature Disclosure:**

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB

Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

| Signer Events | Signature | Timestamp |
|---|---|---|
| Accepted: 2/6/2023 12:02:35 PM<br>ID: db15a5a2-a8c0-44f0-b8a9-20d0c9cdc80c | | |
| R. David Hoover<br>rdavidhoover@msn.com<br>**Trustee**<br>R. David Hoover Revocable Trust<br>Security Level: Email, Account Authentication<br>(None) | DocuSigned by:<br>*R. David Hoover*<br>C74E4B6A3E8F46D...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 134.56.8.36 | Sent: 2/6/2023 12:00:32 PM<br>Viewed: 2/7/2023 4:49:35 PM<br>Signed: 2/7/2023 4:51:17 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 2/7/2023 4:49:35 PM<br>ID: db09348a-f6f8-4648-939d-0c70b41a76d6 | | |
| Robert Alpert<br>robert@danro.com<br>**CEO**<br>Collegiate Parent, LLC<br>Security Level: Email, Account Authentication<br>(None) | DocuSigned by:<br>*Robert Alpert*<br>FC63D9AC3A374AD...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 170.250.247.176 | Sent: 2/6/2023 12:00:34 PM<br>Viewed: 2/6/2023 3:14:05 PM<br>Signed: 2/6/2023 3:14:55 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 2/6/2023 3:14:05 PM<br>ID: ccf6a03b-cba7-4422-a01a-602634784384 | | |
| Roman Alpert<br>roman.alpert@gmail.com<br>**Trustee & Beneficiary**<br>Security Level: Email, Account Authentication<br>(None) | DocuSigned by:<br>*Roman Alpert*<br>457076811C294A8...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 24.160.67.90 | Sent: 2/6/2023 12:00:33 PM<br>Viewed: 2/6/2023 12:04:08 PM<br>Signed: 2/6/2023 12:05:01 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 2/6/2023 12:04:08 PM<br>ID: f81e1d9f-742b-4988-8695-3e859c0ff928 | | |
| Seamus<br>seamus@calliope1.com<br>**Trustee**<br>Security Level: Email, Account Authentication<br>(None) | DocuSigned by:<br>*[signature]*<br>D61861D0943428...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 73.243.118.241<br>Signed using mobile | Sent: 2/6/2023 12:00:34 PM<br>Resent: 2/8/2023 9:41:50 AM<br>Viewed: 2/8/2023 10:02:03 AM<br>Signed: 2/8/2023 10:03:21 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 2/7/2023 9:47:10 AM<br>ID: 1ad3aa02-0b58-4b1e-abe8-972b65af7b83 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/6/2023 12:00:35 PM |
| Certified Delivered | Security Checked | 2/8/2023 10:02:03 AM |
| Signing Complete | Security Checked | 2/8/2023 10:03:21 AM |
| Completed | Security Checked | 2/8/2023 10:03:21 AM |

| Payment Events | Status | Timestamps |
|---|---|---|
| Electronic Record and Signature Disclosure | | |

Electronic Record and Signature Disclosure created on: 3/31/2017 6:45:35 PM
Parties agreed to: Andy Cracchiolo, Don Sanders, Efk, Lane Gaddy, R. David Hoover, Robert Alpert, Roman Alpert, Seamus

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Parker Poe Adams & Bernstein LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' button at the bottom of this document.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Parker Poe Adams & Bernstein LLP:**
You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: skiplohmeyer@parkerpoe.com

**To advise Parker Poe Adams & Bernstein LLP of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at skiplohmeyer@parkerpoe.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address,.
In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.

**To request paper copies from Parker Poe Adams & Bernstein LLP**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to skiplohmeyer@parkerpoe.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Parker Poe Adams & Bernstein LLP**
To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
ii. send us an e-mail to skiplohmeyer@parkerpoe.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows2000? or WindowsXP? |
|---|---|
| Browsers (for SENDERS): | Internet Explorer 6.0? or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0?, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | •Allow per session cookies  •Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.

**Acknowledging your access and consent to receive materials electronically**
To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.
By checking the 'I Agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC RECORD AND SIGNATURE DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Parker Poe Adams & Bernstein LLP as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Parker Poe Adams & Bernstein LLP during the course of my relationship with you.

# EXHIBIT A-3

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

## SECOND AMENDMENT TO CONVERTIBLE NOTE PURCHASE AGREEMENT

This Second Amendment to Convertible Note Purchase Agreement (this *"Amendment"*) is entered into as of the ___ day of May, 2023 (the *"Effective Date"*) between Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), and the persons and entities listed on the schedule of investors attached hereto as **Schedule A** (each an *"Investor"* and, collectively, the *"Investors"*), as such **Schedule A** may be amended in accordance with the Convertible Note Purchase Agreement dated February 21, 2021 (the *"Agreement"*).

### RECITALS

**WHEREAS**, the Investors and the Company desire to enter into this Amendment to amend the Agreement on the terms and conditions set forth herein; and

**WHEREAS**, certain capitalized terms used herein shall have the meanings ascribed to them in the Agreement;

### AGREEMENT

**NOW, THEREFORE**, in consideration of the mutual promises, representations, warranties, covenants and conditions set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement mutually agree as follows:

1.       The definition of Maturity Date in the Agreement is deleted in its entirety and replaced with the following:

*"Maturity Date"* means August 21, 2023.

2.       Within ten (10) days of execution of this Amendment, Company shall provide Investors with all of the information required under Section 7.3 of the Agreement, copies of all representations made by the Company to third-parties concerning the Company's financial condition, and such other financial information reasonably requested by Investors.  Within five (5) days of execution of this Amendment, Company shall provide Investors with a schedule of all current shareholders and debtholders.  **Failure to provide any of this information shall be an immediate default of the Agreement.**

### [Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by its respective officers thereunto duly authorized.

COMPANY:

FELIX PAYMENT SYSTEMS LTD.

By: owen newport

Name:  Owen Newport
Title: Chief Executive Officer

**INVESTORS:**

Robert Alpert

Roman Alpert Trust

By: Roman Alpert

Title: Trustee & Beneficiary

Don Sanders

Andy Cracchiolo

Elk Camp Ventures, LLC

By: Matthew Emerman

Title: Founding Member

Hyperion Investments, LLC

By: Hyperion

Title: Manager

Electronically Filed 01/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

DocuSigned by:

*R. David Hoover*

The R. David Hoover Revocable Trust dated
January 30, 1997 as amended and restated
September 14, 2012

By: R. David Hoover

Title: Trustee


The James W. Taylor Revocable Living Trust
dated September25, 2001

By:

Title:

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

The R. David Hoover Revocable Trust dated
January 30, 1997 as amended and restated
September 14, 2012

By: _____

Title: _____

DocuSigned by:

[signature]

The James W. Taylor Revocable Living Trust
dated September 25, 2001

By: _____Seamus_____

Title: _____Trustee_____

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

# EXHIBIT B-1

Electronically Filed 11/27/2023 16:45 /  / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

### CONVERTIBLE PROMISSORY NOTE

$25,000.00                                                                February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Robert Alpert (the *"Investor"*), the principal sum of Twenty Five Thousand Dollars ($25,000.00), on or after the date hereof, together with interest thereon calculated from September 21, 2020 in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments.**

(a) **Mandatory Repayments.** Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b) **No Optional Prepayments.** The Company may not prepay this Note without the prior written consent of the Investor.

(c) **Application of Payment.** All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

**3.    Events of Default; Remedies**.  Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

**4.    Conversion**.

(a)    **Optional Conversion upon Equity Financing**.  In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)    **Optional Conversion prior to Maturity Date**.  If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)    **Optional Conversion upon the Occurrence of a Sale of the Company**.  Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

**5.    Amendments**.  No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement.  Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**6.    Severability**.  If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

**7.    Captions**.  The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

**8.    Usury Savings Clause**.  It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect.  Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate.  If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

**9.** **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

**10.** **Notices.** Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

**11.** **Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: *Owen Newport*

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-2

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

### CONVERTIBLE PROMISSORY NOTE

$50,000.00                                                                              February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Robert Alpert (the *"Investor"*), the principal sum of Fifty Thousand Dollars ($50,000.00), on or after the date hereof, together with interest thereon calculated from December 21, 2020 in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments.**

(a) **Mandatory Repayments.** Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b) **No Optional Prepayments.** The Company may not prepay this Note without the prior written consent of the Investor.

(c) **Application of Payment.** All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

**3.      Events of Default; Remedies**. Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

**4.      Conversion.**

(a)      **Optional Conversion upon Equity Financing**. In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)      **Optional Conversion prior to Maturity Date.** If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)      **Optional Conversion upon the Occurrence of a Sale of the Company**. Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

**5.      Amendments.** No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement. Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**6.      Severability**. If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

**7.      Captions**. The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

**8.      Usury Savings Clause**. It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect. Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate. If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

**9.**     **Governing Law.**  This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

**10.**     **Notices.**  Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

**11.**     **Successors and Assigns.**  The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: *Owen Newport*

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-3

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

### CONVERTIBLE PROMISSORY NOTE

$50,000.00                                                                          February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Robert Alpert (the *"Investor"*), the principal sum of Fifty Thousand Dollars ($50,000.00), on or after the date hereof, together with interest thereon calculated from January 5, 2021 in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments.**

(a)   **Mandatory Repayments.**   Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)   **No Optional Prepayments.** The Company may not prepay this Note without the prior written consent of the Investor.

(c)   **Application of Payment.**   All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

**3.     Events of Default; Remedies**.  Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

**4.     Conversion.**

(a)     **Optional Conversion upon Equity Financing**.  In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)     **Optional Conversion prior to Maturity Date**.  If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)     **Optional Conversion upon the Occurrence of a Sale of the Company**. Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

**5.     Amendments**.  No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement.  Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**6.     Severability**.  If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

**7.     Captions**.  The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

**8.     Usury Savings Clause**.  It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect.  Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate.  If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

9.      **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

10.     **Notices.** Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

11.     **Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: *Owen Newport*

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-4

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## CONVERTIBLE PROMISSORY NOTE

$200,000.00                                                          February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Robert Alpert (the *"Investor"*), the principal sum of Two Hundred Thousand Dollars ($200,000.00), on or after the date hereof, together with interest thereon calculated from February 19, 2021 in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments.**

(a)    **Mandatory Repayments.**    Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)    **No Optional Prepayments.** The Company may not prepay this Note without the prior written consent of the Investor.

(c)    **Application of Payment.**    All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

**3.     Events of Default; Remedies.** Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

**4.     Conversion.**

(a)     **Optional Conversion upon Equity Financing.** In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)     **Optional Conversion prior to Maturity Date.** If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)     **Optional Conversion upon the Occurrence of a Sale of the Company.** Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

**5.     Amendments.** No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement. Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**6.     Severability.** If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

**7.     Captions.** The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

**8.     Usury Savings Clause.** It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect. Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate. If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

**9.**     **Governing Law**.  This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

**10.**     **Notices**.  Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

**11.**     **Successors and Assigns**.  The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: *Owen Newport*

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-5

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB
Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

.

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## CONVERTIBLE PROMISSORY NOTE

$150,000.00                                                      Effective as of February 19, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Robert Alpert (the *"Investor"*), the principal sum of One Hundred and Fifty Thousand Dollars ($150,000.00), on or after the date hereof, together with interest thereon calculated from February 19, 2021 in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

1. **Interest**. Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

2. **Payments**.

(a)    **Mandatory Repayments**. Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)    **No Optional Prepayments**. The Company may not prepay this Note without the prior written consent of the Investor.

(c)    **Application of Payment**. All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

Electronically Filed 11/27/2023 16:45 / / CV 23 989133 / Confirmation Nbr. 3026833 / CLAJB

Electronically Filed 02/21/2024 14:47 / NOTICE / CV 23 989133 / Confirmation Nbr. 3093461 / BATCH

**3.    Events of Default; Remedies.** Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

**4.    Conversion.**

(a)    **Optional Conversion upon Equity Financing.** In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)    **Optional Conversion prior to Maturity Date.** If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)    **Optional Conversion upon the Occurrence of a Sale of the Company.** Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

**5.    Amendments.** No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement. Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**6.    Severability.** If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted bylaw as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

**7.    Captions.** The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

**8.    Usury Savings Clause.** It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect. Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate. If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

9. **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

10. **Notices.** Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

11. **Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By:_____

Name: Owen Newport

Title: Chief Executive Officer

**DocuSign**

## Certificate Of Completion

Envelope Id: 9DA01BE273234958902E96CF44DE24A4
Subject: FPS - Alpert February Convertible Promissory Note ($150k)
Source Envelope:
Document Pages: 4                Signatures: 1
Certificate Pages: 4             Initials: 0
AutoNav: Enabled
EnvelopeId Stamping: Disabled
Time Zone: (UTC-05:00) Eastern Time (US & Canada)

Status: Completed

Envelope Originator:
Brian Darer
620 South Tryon Street
Suite 800
Charlotte, NC 28202
briandarer@parkerpoe.com
IP Address: 97.65.133.250

## Record Tracking

Status: Original
  11/22/2022 2:45:42 PM

Holder: Brian Darer
  briandarer@parkerpoe.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| owen newport<br>owen.newport@payfelix.com<br>CEO<br>Felix Payment Systems LTD<br>Security Level: Email, Account Authentication (None) | *owen newport*<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.68.248.57<br>Signed using mobile | Sent: 11/22/2022 2:47:59 PM<br>Viewed: 11/26/2022 10:50:45 AM<br>Signed: 11/26/2022 10:50:53 AM |
| Electronic Record and Signature Disclosure:<br>  Accepted: 11/26/2022 10:50:45 AM<br>  ID: 6bc9b72c-3273-43a7-87a2-2e866fdda041 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/22/2022 2:47:59 PM |
| Certified Delivered | Security Checked | 11/26/2022 10:50:45 AM |
| Signing Complete | Security Checked | 11/26/2022 10:50:53 AM |
| Completed | Security Checked | 11/26/2022 10:50:53 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

Electronic Record and Signature Disclosure

Electronic Record and Signature Disclosure created on: 3/31/2017 6:45:35 PM
Parties agreed to: owen newport

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Parker Poe Adams & Bernstein LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' button at the bottom of this document.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Parker Poe Adams & Bernstein LLP:**
You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: skiplohmeyer@parkerpoe.com

**To advise Parker Poe Adams & Bernstein LLP of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at skiplohmeyer@parkerpoe.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..
In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.

**To request paper copies from Parker Poe Adams & Bernstein LLP**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to skiplohmeyer@parkerpoe.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Parker Poe Adams & Bernstein LLP**
To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

>   i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
>   ii. send us an e-mail to skiplohmeyer@parkerpoe.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows2000? or WindowsXP? |
|---|---|
| Browsers (for SENDERS): | Internet Explorer 6.0? or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0?, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | •Allow per session cookies •Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.

**Acknowledging your access and consent to receive materials electronically**
To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.
By checking the 'I Agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC RECORD AND SIGNATURE DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Parker Poe Adams & Bernstein LLP as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by  Parker Poe Adams & Bernstein LLP during the course of my relationship with you.

# EXHIBIT B-6

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## CONVERTIBLE PROMISSORY NOTE

$112,250.00                                                             June 8, 2022

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Robert Alpert (the *"Investor"*), the principal sum of One Hundred and Twelve Thousand Two Hundred and Fifty Dollars ($112,250.00), on or after the date hereof, together with interest thereon calculated from the date hereof in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of February 21, 2021 (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments.**

(a)     **Mandatory Repayments.**     Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)     **No Optional Prepayments.** The Company may not prepay this Note without the prior written consent of the Investor.

(c)     **Application of Payment.**     All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

**3. Events of Default; Remedies.** Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

**4. Conversion.**

(a) **Optional Conversion upon Equity Financing.** In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b) **Optional Conversion prior to Maturity Date.** If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c) **Optional Conversion upon the Occurrence of a Sale of the Company.** Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

**5. Amendments.** No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement. Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**6. Severability.** If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

**7. Captions.** The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

**8. Usury Savings Clause.** It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect. Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate. If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

   **9.**      **Governing Law.**  This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

   **10.**     **Notices.**  Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

   **11.**     **Successors and Assigns.**  The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: _____

Name: Owen Newport

Title: Chief Executive Officer

# EXHIBIT B-7

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

### CONVERTIBLE PROMISSORY NOTE

$150,000.00                                                                              February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Roman Alpert Trust (the *"Investor"*), the principal sum of One Hundred Fifty Thousand Dollars ($150,000.00), on or after the date hereof, together with interest thereon calculated from February 12, 2021 in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest**. Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments**.

(a)    **Mandatory Repayments**.    Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)    **No Optional Prepayments**. The Company may not prepay this Note without the prior written consent of the Investor.

(c)    **Application of Payment**.    All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

3.    **Events of Default; Remedies**.  Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

4.    **Conversion**.

(a)    **Optional Conversion upon Equity Financing**.  In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)    **Optional Conversion prior to Maturity Date**.  If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)    **Optional Conversion upon the Occurrence of a Sale of the Company**. Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

5.    **Amendments**.  No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement.  Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

6.    **Severability**.  If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

7.    **Captions**.  The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

8.    **Usury Savings Clause**.  It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect.  Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate.  If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

      **9.**     **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

      **10.**     **Notices.** Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

      **11.**     **Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: _____ *Owen Newport* _____

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-8

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT
BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR
UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE
OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT
AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT
TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE
ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY
SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR
HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE
SECURITIES LAWS.

### CONVERTIBLE PROMISSORY NOTE

$150,000.00                                                                      February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises
to pay to the order of Don Sanders (the *"Investor"*), the principal sum of One Hundred Fifty Thousand
Dollars ($150,000.00), on or after the date hereof, together with interest thereon calculated from February
17, 2021 in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note
is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as
amended, restated, modified or supplemented), by and among the Company and the Investor (the
*"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the
meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is
subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b)
the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid,
outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per
annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable
as set forth herein.

**2. Payments.**

(a)      **Mandatory Repayments.**      Unless this Note is previously converted in
accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued
and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of
the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or
automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)      **No Optional Prepayments.**  The Company may not prepay this Note without the
prior written consent of the Investor.

(c)      **Application of Payment.**  All partial payments (whether mandatory or
otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection
or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note,
and (iii) third, to the principal amount of the Note.

**3.    Events of Default; Remedies**.  Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

**4.    Conversion**.

(a)    **Optional Conversion upon Equity Financing**.  In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)    **Optional Conversion prior to Maturity Date**.  If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)    **Optional Conversion upon the Occurrence of a Sale of the Company**. Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

**5.    Amendments**.  No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement.  Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**6.    Severability**.  If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

**7.    Captions**.  The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

**8.    Usury Savings Clause**.  It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect.  Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate.  If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

       **9.**     **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

       **10.**     **Notices.** Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

       **11.**     **Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

.

.

**IN WITNESS WHEREOF,** the Company has caused this Note to be issued as of the date first written above.

**FELIX PAYMENT SYSTEMS LTD.**

By: ___*Owen Newport*___

Name:  **Owen** Newport

Title: **Chief Executive Officer**

# EXHIBIT B-9

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## CONVERTIBLE PROMISSORY NOTE

$150,000.00                                                                                            February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation, hereby promises to pay to the order of Andy Cracchiolo (the *"Investor"*), the principal sum of One Hundred Fifty Thousand Dollars ($150,000.00), on or after the date hereof, together with interest thereon calculated from February 21, 2021 in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest**. Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments**.

(a) **Mandatory Repayments**. Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b) **No Optional Prepayments**. The Company may not prepay this Note without the prior written consent of the Investor.

(c) **Application of Payment**. All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

3.    **Events of Default; Remedies**.  Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

4.    **Conversion**.

(a)    **Optional Conversion upon Equity Financing**.  In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)    **Optional Conversion prior to Maturity Date**.  If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)    **Optional Conversion upon the Occurrence of a Sale of the Company**. Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

5.    **Amendments**.  No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement.  Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

6.    **Severability**.  If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

7.    **Captions**.  The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

8.    **Usury Savings Clause**.  It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect.  Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate.  If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

**9.**      **Governing Law.**  This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

**10.**      **Notices.**  Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

**11.**      **Successors and Assigns.**  The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: _Owen Newport_ _____

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-10

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## CONVERTIBLE PROMISSORY NOTE

$25,000.00                                                                  February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Elk Camp Ventures, LLC (the *"Investor"*), the principal sum of Twenty-Five Thousand Dollars ($25,000.00), on or after the date hereof, together with interest thereon calculated from the date hereof in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments**.

(a) **Mandatory Repayments**.    Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b) **No Optional Prepayments**. The Company may not prepay this Note without the prior written consent of the Investor.

(c) **Application of Payment**.    All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

3. **Events of Default; Remedies**. Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

4. **Conversion**.

(a) **Optional Conversion upon Equity Financing**. In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b) **Optional Conversion prior to Maturity Date**. If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c) **Optional Conversion upon the Occurrence of a Sale of the Company**. Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

5. **Amendments**. No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement. Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

6. **Severability**. If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

7. **Captions**. The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

8. **Usury Savings Clause**. It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect. Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate. If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

      **9.**    **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

      **10.**    **Notices.** Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

      **11.**    **Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: _Owen Newport_____

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-11

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

### CONVERTIBLE PROMISSORY NOTE

$50,000.00                                                                      February 21, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of Hyperion Investments, LLC (the *"Investor"*), the principal sum of Fifty Thousand Dollars ($50,000.00), on or after the date hereof, together with interest thereon calculated from the date hereof in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of the date hereof (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments.**

(a)    **Mandatory Repayments.**    Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)    **No Optional Prepayments.**    The Company may not prepay this Note without the prior written consent of the Investor.

(c)    **Application of Payment.**    All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

3.    **Events of Default; Remedies.**  Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

4.    **Conversion.**

(a)    **Optional Conversion upon Equity Financing.**  In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)    **Optional Conversion prior to Maturity Date.**  If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)    **Optional Conversion upon the Occurrence of a Sale of the Company.**  Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

5.    **Amendments.**  No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement.  Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

6.    **Severability.**  If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

7.    **Captions.**  The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

8.    **Usury Savings Clause.**  It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect.  Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate.  If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

      **9.**     **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

      **10.**     **Notices.** Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

      **11.**     **Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: *Owen Newport*

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-12

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "*ACT*"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## CONVERTIBLE PROMISSORY NOTE

$100,000.00                                                                                        February 25, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the "*Company*"), hereby promises to pay to the order of The R. David Hoover Revocable Trust dated January 30, 1997 as amended and restated September 14, 2012 (the "*Investor*"), the principal sum of One Hundred Thousand Dollars ($100,000.00), on or after the date hereof, together with interest thereon calculated from the date hereof in accordance with the provisions of this Convertible Promissory Note (this "*Note*"). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of February 21, 2021 (as amended, restated, modified or supplemented), by and among the Company and the Investor (the "*Purchase Agreement*") and is also a "*Note*," as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.** Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments.**

(a)    **Mandatory Repayments.**    Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)    **No Optional Prepayments.** The Company may not prepay this Note without the prior written consent of the Investor.

(c)    **Application of Payment.** All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

**3.     Events of Default; Remedies.**  Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

**4.     Conversion.**

(a)     **Optional Conversion upon Equity Financing.**  In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b)     **Optional Conversion prior to Maturity Date.**  If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c)     **Optional Conversion upon the Occurrence of a Sale of the Company.**  Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

**5.     Amendments.**  No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement.  Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**6.     Severability.**  If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

**7.     Captions.**  The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

**8.     Usury Savings Clause.**  It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect.  Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate.  If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

9.      **Governing Law**.  This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

10.     **Notices**.  Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

11.     **Successors and Assigns**.  The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party.

**[Signature Page Follows]**

IN WITNESS WHEREOF, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: *Owen Newport*

Name:  Owen Newport
Title: Chief Executive Officer

# EXHIBIT B-13

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE *"ACT"*), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## CONVERTIBLE PROMISSORY NOTE

$50,000.00                                                                                    February 25, 2021

Felix Payment Systems Ltd., a British Columbia corporation (the *"Company"*), hereby promises to pay to the order of The James W. Taylor Revocable Living Trust Dated September 25, 2001 (the *"Investor"*), the principal sum of Fifty Thousand Dollars ($50,000.00), on or after the date hereof, together with interest thereon calculated from the date hereof in accordance with the provisions of this Convertible Promissory Note (this *"Note"*). This Note is issued pursuant to a certain Convertible Note Purchase Agreement, dated as of February 21, 2021 (as amended, restated, modified or supplemented), by and among the Company and the Investor (the *"Purchase Agreement"*) and is also a *"Note,"* as defined therein. Terms not defined herein shall have the meanings given them in the Purchase Agreement.

The following is a statement of the rights of the Investor and the conditions to which this Note is subject, and to which the Investor, by the acceptance of this Note, agrees:

**1. Interest.**  Until the earlier of (a) conversion of this Note in accordance with Section 4 or (b) the payment in full of the outstanding obligations under this Note, interest shall accrue on the unpaid, outstanding principal amount of this Note from the date hereof at a rate equal to six percent (6%) per annum, computed on the basis of a 365-day year. Accrued interest on this Note shall be due and payable as set forth herein.

**2. Payments.**

(a)    **Mandatory Repayments.**  Unless this Note is previously converted in accordance with Section 4, the entire outstanding principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on the earlier of (i) the Maturity Date; (ii) a Sale of the Company; and (iii) an Event of Default in which the Notes have been accelerated by the Investor or automatically accelerated in accordance with the provisions of the Purchase Agreement.

(b)    **No Optional Prepayments.**  The Company may not prepay this Note without the prior written consent of the Investor.

(c)    **Application of Payment.**  All partial payments (whether mandatory or otherwise) shall be paid and applied (i) first, to the reimbursement of any expenses or costs of collection or enforcement to which the Investor is entitled, (ii) second, to accrued and unpaid interest of the Note, and (iii) third, to the principal amount of the Note.

3. **Events of Default; Remedies**. Upon the occurrence of an Event of Default as set forth in Section 6 of the Purchase Agreement, the Investor shall be entitled to the remedies provided for in the Purchase Agreement, including, without limitation, those provided under Section 6.2 of the Purchase Agreement.

4. **Conversion**.

(a) **Optional Conversion upon Equity Financing**. In the event the Company consummates an Equity Financing prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors (as defined in the Purchase Agreement), into the Equity Securities of the Company issued in the Equity Financing in accordance with the terms of Section 1.6(a) of the Purchase Agreement.

(b) **Optional Conversion prior to Maturity Date**. If not sooner repaid or converted in a Qualified Equity Financing or Other Financing, prior to the Maturity Date, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(b) of the Purchase Agreement.

(c) **Optional Conversion upon the Occurrence of a Sale of the Company**. Notwithstanding any provision of this Note or the Purchase Agreement to the contrary, in the event of a Sale of the Company prior to the conversion or repayment in full of this Note, in lieu of the Sale Payment, the outstanding principal amount and accrued and unpaid interest under this Note shall be convertible, at the option of the Requisite Investors, into Equity Securities of the Company in accordance with the terms of Section 1.6(c) of the Purchase Agreement.

5. **Amendments**. No amendment or waiver of any provision of this Note, nor consent to any departure by the Company herefrom, shall in any event be effective unless the same shall be in writing in conformity with Section 9.8 of the Purchase Agreement. Such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

6. **Severability**. If any term, covenant or provision contained in this Note, or the application thereof to any Person or circumstance, shall be determined to be void, invalid, illegal or unenforceable to any extent or shall otherwise operate to invalidate this Note, in whole or part, then such term, covenant or provision only shall be deemed not contained in this Note; the remainder of this Note shall remain operative and in full force and effect and shall be enforced to the greatest extent permitted by law as if such clause or provision had never been contained herein or therein; and the application of such term, covenant or provision to other Persons or circumstances shall not be affected, impaired or restricted thereby.

7. **Captions**. The captions or headings at the beginning of any section or portion of any section in this Note are for the convenience of the Company and the Investor and for purpose of reference only and shall not limit or otherwise alter the meaning of the provisions of this Note.

8. **Usury Savings Clause**. It is the intention of the parties hereto to comply with applicable state and federal usury laws from time to time in effect. Accordingly, notwithstanding any provision to the contrary in this Note or the Purchase Agreement or any other document related hereto, in no event (including, but not limited to, prepayment or acceleration of the maturity of any obligation) will this Note or any such other document require the payment or permit the collection or receipt of interest in excess of the highest lawful rate. If under any circumstance whatsoever, any provision of this Note or of any other document pertaining hereto will provide for the payment, collection or receipt of interest in excess of the

highest lawful rate, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity.

**9.** **Governing Law**. This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of law thereof.

**10.** **Notices**. Any notice, request or other communication required or permitted hereunder shall be in writing and given in accordance with Section 9.1 of the Purchase Agreement.

**11.** **Successors and Assigns**. The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the Investor and the Company, provided that the Investor shall not be entitled to assign its rights or obligations hereunder without the prior written consent of the other party

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Company has caused this Note to be issued as of the date first written above.

FELIX PAYMENT SYSTEMS LTD.

By: *Owen Newport*

Name:  Owen Newport
Title: Chief Executive Officer



181424233

EXHIBIT 2

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

ROBERT ALPERT, ROMAN ALPERT AS TRUSTEE OF
R, ET AL
    **Plaintiff**

Case No: CV-23-989133

Judge: EMILY HAGAN

FELIX PAYMENT SYSTEMS, LTD.
    **Defendant**

## JOURNAL ENTRY

92 DEFAULT - FINAL

TELEPHONE DEFAULT HEARING HELD 05/06/2024. PLAINTIFFS APPEARED THROUGH COUNSEL. DEFENDANT
FAILED TO APPEAR. PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT, FILED 04/12/2024, IS GRANTED. O.S.J.
COURT COST ASSESSED TO THE DEFENDANT(S).
PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER
PRESCRIBED BY CIV.R. 5(B). THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL
PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE.

_____

Judge Signature          Date

FILED
2024 MAY -6 ᗡ 3 35
CLERK OF COURTS
CUYAHOGA COUNTY

- 92
05/06/2024

Page 1 of 1

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| ROBERT ALPERT, *et al.* | ) **CASE NO. CV 23 989133** |
| Plaintiffs, | ) **JUDGE EMILY HAGAN** |
| | ) |
| v. | ) |
| | ) **DEFAULT JUDGMENT** |
| FELIX PAYMENT SYSTEMS LTD., | ) |
| Defendant. | ) |
| | ) |

On this day, this cause came to be heard upon Plaintiffs' Motion for Default Judgment against Defendant Felix Payment Systems, Ltd ("Defendant"). Upon review of Plaintiffs' Motion, including the Affidavit of Service, the Affidavit of Damages, and the record herein, the Court finds as follows:

Defendant was served with the Summons and Complaint in accordance with Ohio Civil Rule 4.5(A) on March 14, 2024. More than twenty-eight (28) days have lapsed since service upon Defendant and Defendant has failed to appear herein and defend against Plaintiffs' claims. Accordingly, Plaintiffs' motion for default judgment against Defendant Felix Payment Systems, Ltd. is well taken and GRANTED.

Judgment is hereby entered against Defendant Felix Payment Systems, Ltd. and in favor of the Plaintiffs as follows:

a. In favor of Robert Alpert in the amount of $28,795.77, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

b. In favor of Robert Alpert in the amount of $56,738.54, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

c.  In favor of Robert Alpert in the amount of $56,599.12, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

d.  In favor of Robert Alpert in the amount of $224,732.18, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

e.  In favor of Robert Alpert in the amount of $168,549.18, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

f.  In favor of Robert Alpert in the amount of $116,698.39, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

g.  In favor of the Roman Alpert Trust in the amount of $168,742.41, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

h.  In favor of Don Sanders in the amount of $168,604.36, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

i.  In favor of Andy Cracchiolo in the amount of $168,493.91, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

j.  In favor of Elk Camp Ventures, LLC in the amount of $28,082.32, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

k.  In favor Hyperion Investments, LLC in the amount of $56,164.64, plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

l.  In favor of The R. David Hoover Revocable Trust dated January 30, 1997 as amended and restated September 14, 2012 in the amount of $112,255.64 plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full;

m.  In favor of The James W. Taylor Revocable Living Trust dated September 25, 2001 in the amount of $56,127.82 plus interest in the amount of 18% calculated from February 1, 2023 until the judgment is paid in full.

n.  Plaintiffs are awarded Court costs;

This is a final and appealable order, there being no just cause for delay.

**IT IS SO ORDERED.**

DATE: 5/6/24

JUDGE EMILY HAGAN

# EXHIBIT 3

## CENTRAL SECURITIES REGISTER

### FELIX PAYMENT SYSTEMS LTD.

**Common Shares without par value**

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cash or Other | Paid Per Share | |
| | | | | | | | | Cash | Other Than Cash Particulars [Cancel details] |
| Mar 11, 2020 | Mar 11, 2020 | Robert A. Goodrich 20th Floor, 250 Howe Street, Vancouver British Columbia V6C 3R8 Canada | 1 | Incorporation starting balance (1) | | Not Issued | Cash | $1.00 | [1 Repurchase by Company] |
| Mar 11, 2020 | | Kim Fleury Bertrand 6894 Copper Cove Road, Vancouver BC V7W 2K5 Canada | 90,000 | Allotment (90,000) | | 1C | Cash | $0.0001 | |
| Mar 11, 2020 | | Cryptonomicom PTY Ltd. | 30,000 | Allotment (30,000) | | 2C | Cash | $0.0001 | |
| Mar 11, 2020 | | Jay Donovan | 90,000 | Allotment (90,000) | | 3C | Cash | $0.0001 | |
| Mar 11, 2020 | | Oliver Ransford | 90,000 | Allotment (90,000) | | 4C | Cash | $0.0001 | |

Generated on August 31, 2023.

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cash or Other | Paid Per Share: Cash | Other Than Cash Particulars [Cancel details] |
| Mar 11, 2020 | | Rankin Tech PTY Ltd. | 90,000 | Allotment (90,000) | | 5C | Cash | $0.0001 | |
| Mar 11, 2020 | | Noah Fitzgerald Unit 605, 405 North Ocean Drive, Pompano Beach Florida 33062 USA | 25,000 | Allotment (25,000) | | 6C | Cash | $0.0001 | |
| Mar 11, 2020 | | Transaction Data USA Inc. | 25,000 | Allotment (25,000) | | 7C | Cash | $0.0001 | |
| Mar 11, 2020 | Dec 10, 2020 | Gentek Resourcing Pty Ltd. | 510,000 | Allotment (510,000) | | 8C | Cash | $0.0001 | [267,500 Transfer to Owen Newport (SC#35C)] [242,500 Transfer to Warren Hogg (SC#36C)] |
| Mar 11, 2020 | Dec 10, 2020 | Gentek Investment PTY Ltd. | 20,000 | Allotment (20,000) | | 9C | Cash | $0.0001 | [20,000 Transfer to Owen Newport (SC#39C)] |

7

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cash or Other | Paid Per Share | |
| | | | | | | | | Cash | Other Than Cash Particulars [Cancel details] |
| Mar 11, 2020 | | Steve Sayers | 20,000 | Allotment (20,000) | | 10C | Cash | $0.0001 | |
| Mar 12, 2020 | | Kim Fleury Bertrand 6894 Copper Cove Road, Vancouver BC V7W 2K5 Canada | 20,000 | Allotment (20,000) | | 11C | Cash | | |
| Mar 12, 2020 | | Cryptonomicom PTY Ltd. | 30,000 | Allotment (30,000) | | 12C | Cash | | |
| Mar 12, 2020 | | Jay Donovan | 100,000 | Allotment (100,000) | | 13C | Cash | | |
| Mar 12, 2020 | | Oliver Ransford | 100,000 | Allotment (100,000) | | 14C | Cash | | |
| Mar 12, 2020 | | Rankin Tech PTY Ltd. | 100,000 | Allotment (100,000) | | 15C | Cash | | |
| Mar 12, 2020 | | Noah Fitzgerald | 25,000 | Allotment | | 16C | Cash | | |

8

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cash or Other | Paid Per Share | |
| | | | | | | | | Cash | Other Than Cash Particulars [Cancel details] |
| | | Unit 605, 405 North Ocean Drive, Pompano Beach Florida 33062 USA | | (25,000) | | | | | |
| Mar 12, 2020 | | Transaction Data USA Inc. | 25,000 | Allotment (25,000) | | 17C | Cash | | |
| Mar 12, 2020 | Dec 10, 2020 | Gentek Resourcing Pty Ltd. | 560,000 | Allotment (560,000) | | 18C | Cash | | [25,000 Transfer to Warren Hogg (SCH36C)] [267,500 Transfer to Kieran Moloney (SCH37C)] [267,500 Transfer to Sean Dennis (SCH38C)] |
| Mar 12, 2020 | Dec 10, 2020 | Gentek Investment PTY Ltd. | 20,000 | Allotment (20,000) | | 19C | Cash | | [20,000 Transfer to Warren Hogg (SCH40C)] |
| Mar 12, 2020 | | Steve Sayers | 20,000 | Allotment (20,000) | | 20C | Cash | | |

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Cash or Other | Cash | Other Than Cash Particulars [Cancel details] |
|---|---|---|---|---|---|---|---|---|---|
| Mar 25, 2020 | Mar 25, 2020 | Jake Boxer | 242,261 | Allotment (242,261) | | 21C | Cash | $2.06 | [242,261 Recalled Issued in Error by Company] |
| Mar 25, 2020 | | Kimberly M. Moore | 17,304 | Allotment (17,304) | | 22C | Cash | $4.33 | |
| Mar 25, 2020 | | Cynthia M Sheppard & John G Sheppard Jr Living Trust | 11,536 | Allotment (11,536) | | 23C | Cash | $4.33 | |
| Mar 25, 2020 | | Mineral Royalties Online Pty Ltd. | 46,145 | Allotment (46,145) | | 24C | Cash | $2.16 | |
| Apr 2, 2020 | | Doug Mordy | 4,854 | Allotment (4,854) | | 25C | Cash | $2.06 | |
| Apr 2, 2020 | | Jake Boxer | 7,281 | Allotment (7,281) | | 26C | Cash | $2.06 | |

10

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company Cash or Other | Cash | Other Than Cash Particulars [Cancel details] |
|---|---|---|---|---|---|---|---|---|---|
| May 13, 2020 | | Doug Mordy | 46,771 | Allotment (46,771) | | 27C | Cash | $1.93 | |
| May 13, 2020 | | Jake Boxer | 70,156 | Allotment (70,156) | | 28C | Cash | $1.93 | |
| Jul 15, 2020 | | Doug Mordy | 51,625 | Allotment (51,625) | | 29C | Cash | $1.93 | |
| Jul 15, 2020 | | Jake Boxer | 77,437 | Allotment (77,437) | | 30C | Cash | $1.93 | |
| Dec 1, 2020 | | Napil Nalalal | 14,535 | Issuance (14,535) | | 31C | Cash | $3.44 | |
| Dec 1, 2020 | | Ralph Kurt McFee | 14,535 | Issuance (14,535) | | 32C | Cash | $3.44 | |
| Dec 1, 2020 | | Brookridge Chartered Professional | 17,442 | Issuance (17,442) | | 33C | Cash | $3.44 | |

Page 6

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cash or Other | Paid Per Share | | Other Than Cash Particulars [Cancel details] |
| | | | | | | | | Cash | | |
| | | Accountants Inc. | | | | | | | | |
| Dec 1, 2020 | | Jake Boxer | 69,768 | Issuance (69,768) | | 34C | Cash | $3.44 | | |
| Dec 10, 2020 | | Owen Newport | 267,500 | Transfer (267,500) | Gentek Resourcing Pty Ltd. (SC#8C) | 35C | Cash | | | |
| Dec 10, 2020 | | Warren Hogg | 267,500 | Transfer (242,500) Transfer (25,000) | Gentek Resourcing Pty Ltd. (SC#8C) Gentek Resourcing Pty Ltd. (SC#18C) | 36C | Cash Cash | $0.00 | | |
| Dec 10, 2020 | | Kieran Moloney | 267,500 | Transfer (267,500) | Gentek Resourcing Pty Ltd. (SC#18C) | 37C | Cash | | | |
| Dec 10, 2020 | | Sean Dennis | 267,500 | Transfer (267,500) | Gentek Resourcing Pty | 38C | Cash | | | |

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cash or Other | Paid Per Share | | |
| | | | | | | | | Cash | Other Than Cash Particulars [Cancel details] | |
| | | | | | Ltd. (SC#18C) | | | | | |
| Dec 10, 2020 | | Owen Newport | 20,000 | Transfer (20,000) | Gentek Investment PTY Ltd. (SC#9C) | 39C | Cash | | | |
| Dec 10, 2020 | | Warren Hogg | 20,000 | Transfer (20,000) | Gentek Investment PTY Ltd. (SC#19C) | 40C | Cash | | | |
| May 31, 2021 | | Jake Boxer | 101,744 | Issuance (101,744) | | 41C | Cash | $3.44 | | |
| May 31, 2021 | | Candice Mordy | 65,406 | Issuance (65,406) | | 42C | Cash | $3.44 | | |
| Jul 13, 2021 | | Jake Boxer | 52,326 | Issuance (52,326) | | 43C | Cash | $3.44 | | |
| Jul 23, 2021 | | Candice Mordy | 50,872 | Issuance (50,872) | | 44C | Cash | $3.44 | | |

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cash or Other | Paid Per Share | |
| | | | | | | | | Cash | Other Than Cash Particulars [Cancel details] |
| Mar 29, 2022 | | Jake Boxer | 194,396 | Issuance (194,396) | | 45C | Cash | $3.44 | |
| Mar 29, 2022 | | Candice Mordy | 57,893 | Issuance (57,893) | | 46C | Cash | $3.44 | |
| Mar 29, 2022 | | Section 3 Ventures (VCC) Inc. | 58,140 | Issuance (58,140) | | 47C | Cash | $3.44 | |
| Apr 2, 2023 | | Andrew Cole 1305 - 1111 Richards St, Vancouver BC  V6B 3E1 Canada | 75,504 | Issuance (75,504) | | 48C | Cash | $0.01 | |
| Apr 2, 2023 | | Ross Smith 1801 - 1199 Seymour Street, Vancouver BC  V6B 1K3 Canada | 75,504 | Issuance (75,504) | | 49C | Cash | $0.01 | |

# CENTRAL SECURITIES REGISTER

## FELIX PAYMENT SYSTEMS LTD.

### Common Shares without par value

| Date Share Certificate Issued | Date Share Certificate Cancelled | Full Name and Address of Shareholder | Number of Shares | Acquired by Allotment, Conversion, Transfer (or) | If Transferred, from whom | Cert. No. | Consideration Paid to Company | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cash or Other | Paid Per Share | | |
| | | | | | | | | Cash | Other Than Cash Particulars | [Cancel details] |
| | | **Total issued:** 3,171,174 | | | | | | | | |